**Lansing, Michigan**

# Opinion

Chief Justice:    Justices:
Marilyn Kelly    Michael F. Cavanagh
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway
Alton Thomas Davis

FILED DECEMBER 29, 2010

STATE OF MICHIGAN

SUPREME COURT

STEVEN KING,

       Plaintiff-Appellee,

v

No. 140684

STATE OF MICHIGAN, MICHIGAN
DEPARTMENT OF LABOR AND
ECONOMIC GROWTH, and
COMMISSIONER OF THE OFFICE OF
FINANCIAL AND INSURANCE
REGULATION,

       Defendants-Appellants.

BEFORE THE ENTIRE BENCH

DAVIS, J.

Defendants appeal a Court of Appeals judgment affirming the trial court's grant of summary disposition in favor of plaintiff, which enjoined defendants from revoking plaintiff's resident insurance producer[1] license. We affirm.

---

[1] A "resident insurance producer" is more commonly known as an insurance agent.

The issues in this case are (1) whether in 2004 the Commissioner of the Office of Financial and Insurance Services[2] was *required* by statute to deny plaintiff's application for a resident insurance producer license on the basis of plaintiff's fully disclosed prior felony conviction, (2) whether the commissioner is now *required* by statute to affirmatively revoke plaintiff's license on the basis of the same prior felony, and (3) whether the commissioner is now *permitted* to revoke plaintiff's license on the basis of the same prior felony. We answer all three questions in the negative.

## I. FACTS AND PROCEEDINGS

In 2000, plaintiff was convicted of operating a motor vehicle under the influence of liquor (OUIL), a felony. MCL 257.625. In 2004, he applied to the Michigan Office of Financial and Insurance Services (OFIS)[3] for a resident insurance producer license. Plaintiff fully disclosed his conviction. Plaintiff applied for a waiver pursuant to 18 USC 1033.[4] The director of OFIS's licensing division sent plaintiff a letter that read in part:

> Please be apprised that pursuant to 18 U.S.C. Section 1033 and 1034, specifically Section 1033(3)(2), permission to engage in the business of insurance is hereby granted to you by the Commissioner of the Office of

---

[2] This position was held by Linda Watters from April 2003 until October 2007, when Ken Ross was appointed.

[3] OFIS is now the Office of Financial and Insurance Regulation, but at most of the relevant times, including in the Court of Appeals, it was referred to as OFIS.

[4] This section provides, among other things, that a person

> who has been convicted of any criminal felony involving dishonesty or a breach of trust . . . may engage in the business of insurance or participate in such business if such person has the written consent of any insurance regulatory official authorized to regulate the insurer, which consent specifically refers to this subsection. [18 USC 1033(e).]

Financial and Insurance Services under this federal statute in response to your application for such waiver. OFIS reviewed your 3rd OUIL felony conviction.

Please note that it is highly recommended that this letter be safeguarded and kept together with your license as proof of this waiver under 18 U.S.C. 1033/1034 in case your record and/or ability to engage in the business of insurance is ever challenged by someone in the industry, state government, or federal government.

Thus, defendants unquestionably had been made aware of plaintiff's felony. The commissioner granted plaintiff's license.

Plaintiff then pursued a career as an insurance agent for a number of years. In the meantime, he has not been convicted of any other felonies or provided any new grounds for revocation of his license that we are aware of. In 2008, defendants began proceedings to revoke plaintiff's license, and plaintiff initiated the instant suit. The gravamen of defendants' argument is that a change to the Insurance Code in 2002 had *required* the commissioner to deny plaintiff's application, that failing to do so was a mistake, and that the current provisions of the Insurance Code require the commissioner to correct that mistake. The trial court ruled that even if the commissioner had made a mistake in granting plaintiff's license, equity precluded defendants from revoking it now, and the Court of Appeals affirmed.

## II. STANDARD OF REVIEW

The trial court's decision on a motion for summary disposition is reviewed de novo. *Coblentz v City of Novi*, 475 Mich 558, 567; 719 NW2d 73 (2006). This Court reviews de novo questions of statutory interpretation. *Id*. The trial court's exercise of its equitable authority is discretionary within the confines of equity jurisprudence and the

3

facts of the particular case, *Youngs v West*, 317 Mich 538, 545; 27 NW2d 88 (1947), and this Court reviews a trial court's grant of injunctive relief for an abuse of that discretion, *Pontiac Fire Fighters Union Local 376 v City of Pontiac*, 482 Mich 1, 8; 753 NW2d 595 (2008). The trial court's findings of fact are reviewed for clear error. *Beason v Beason*, 435 Mich 791, 801-803; 460 NW2d 207 (1990), citing MCR 2.613(C).

## III. THE INSURANCE CODE

### A. INSURANCE CODE LICENSURE PROVISIONS IN 2004

Before 2002, the Insurance Code's licensure provisions had required applicants to have "good moral character." See former MCL 500.1204(4), as amended by 1986 PA 173. It remains the law today that no licensing agency may make a finding as to an applicant's moral character on the sole basis of a criminal conviction. MCL 338.42. It also remains the law that "[o]rders, decisions, findings, rulings, determinations, opinions, actions, and inactions of the commissioner in [the Insurance Code] shall be made or reached in the reasonable exercise of discretion." MCL 500.205.

The "good moral character" requirement in the Insurance Code's licensure provisions was replaced by 2001 PA 228. When plaintiff applied for his license, MCL 500.1205(1)(b) provided that an application "shall not be approved" if the applicant had "committed any act that is a ground for denial, suspension, or revocation under [MCL 500.1239]." While this seems mandatory when read in isolation, MCL 500.1239(1) provided that "the commissioner *may* place on probation, suspend, revoke, or refuse to issue" a license for a list of possible reasons, including an applicant's "having been convicted of a felony." MCL 500.1239(1)(f) (emphasis added). Consistent with MCL

4

500.205, the licensure requirement mandates that the commissioner make a discretionary judgment call when reviewing an application and deny the application if he or she concludes—in the exercise of that discretion—that denial, suspension, or revocation would be appropriate.

In other words, 2001 PA 228 replaced the ambiguous judgment call of "good moral character" with a more rigorously defined judgment call that entailed consideration of enumerated scenarios under which adverse action *may* be found appropriate. When the applicable versions of MCL 500.1205, MCL 500.1239, and MCL 500.205 are read *together*, they set forth a licensure procedure that requires the commissioner to exercise judgment within a framework, rather than exercising judgment in a more nebulous environment. We reject defendants' contention that the Insurance Code in effect in 2004 *required* the commissioner to deny plaintiff's application. The Insurance Code did not, and the commissioner's exercise of discretion in granting plaintiff a license was therefore permissible.

We recognize that shortly before plaintiff applied for his license, the commissioner rendered a decision[5] concluding that 2001 PA 228 removed the discretion to permit felons to receive licenses. An agency's interpretation of a statute is entitled to deference, but generally only if that interpretation has been relied on for a long time, and in any event no such interpretation may overcome the plain meaning of the statute itself. *Ludington Serv Corp v Acting Ins Comm'r*, 444 Mich 481, 505 & n 35; 511 NW2d 661 (1994). Defendants acknowledge that this unpublished decision has not been extensively

---

[5] *Mazur v Office of Fin & Ins Servs*, issued May 14, 2004 (Docket No. 2003-1515).

5

relied on or applied consistently, and our review of the record indicates that the opinion was not even widely circulated internally. Furthermore, it was clearly not relied on when the commissioner considered plaintiff's application and granted his license. Finally, the decision was incorrect.

Therefore, we answer the first question, whether in 2004 the commissioner had been required by statute to deny plaintiff's application, in the negative.

B. INSURANCE CODE LICENSURE PROVISIONS IN 2008 AND TODAY

Subsequently, 2008 PA 422 and 2008 PA 423 amended MCL 500.1205 and MCL 500.1239. MCL 500.1205 now provides in relevant part that "[a]n application for a resident insurer [sic] producer license shall not be approved unless the commissioner finds that the individual . . . [h]as not committed any act listed in [MCL 500.1239(1)]." And MCL 500.1239(1)(f) provides that "the commissioner *shall* refuse to issue a license" for "[h]aving been convicted of a felony."

These two statues are now consistent, and were a convicted felon to apply for an insurance producer license *today*, the commissioner *would* be required to deny it. Indeed, plaintiff concedes as much. But no language in these statutes rebuts the general rule of construction that changes to a statute should only apply prospectively. Even if we were to engage in a speculation that the amendment was intended to clarify the Legislature's prior intent, amendments may not be applied retrospectively if doing so would impair a vested right. *Brewer v A D Transp Express, Inc*, 486 Mich 50, 56-57; 782 NW2d 475 (2010). The fact that an applicant like plaintiff would necessarily be denied a license

today does not automatically invalidate defendant's decision to exercise its discretion to grant him a license in 2004.

Although the current statutes require denial of a license, they do not require an existing license to be revoked. The first clause of MCL 500.1239(1) states in full: "In addition to any other powers under this act, the commissioner may place on probation, suspend, or revoke an insurance producer's license or may levy a civil fine under [MCL 500.1244] or any combination of actions, and the commissioner shall refuse to issue a license under [MCL 500.1205 or 500.1206a], for any 1 or more of the following causes[.]" Denial is mandatory if any of a number of enumerated conditions is satisfied; however, *revocation* is still as discretionary as it was in 2004.

Therefore, we answer the second question, whether defendant is currently required by statute to revoke plaintiff's license, in the negative.

## IV. REVOCATION

We observe initially that the plain language of the present Insurance Code gives the commissioner the discretion to pursue revocation of plaintiff's resident insurance producer license for a variety of possible reasons, including plaintiff's having been convicted of a felony. However, we emphasize that doing so must be a "reasonable exercise of discretion." MCL 500.205. Here, the gravamen of defendants' argument is that the commissioner is required to revoke plaintiff's license. This erroneous abdication of discretion is, in itself, an abuse of discretion. *People v Stafford*, 434 Mich 125, 134 n 4; 450 NW2d 559 (1990). Therefore, in this case, the commissioner cannot be said to be engaging in a "reasonable exercise of discretion."

7

With regard to this issue, we hold only that the commissioner may not revoke a license on the basis of the erroneous belief that he must do so when, in fact, he has discretion. Because this result is mandated by the plain terms of the Insurance Code, we make no pronouncement about whether equity applies here or what effect it might have. On that limited basis, we therefore answer the third question, whether the commissioner is now permitted to revoke plaintiff's license, in the negative.

## V. CONCLUSION

Plaintiff's license was properly granted by the commissioner in 2004. The Insurance Code does not require plaintiff's license to be revoked now. The commissioner could have exercised reasonable discretion and decided to pursue revocation of plaintiff's license; however, in this case, the commissioner necessarily abused that discretion by proceeding on the basis of an erroneous belief that he was *required* to revoke plaintiff's license.

For the reasons stated, we affirm the courts below.

Alton Thomas Davis
Diane M. Hathaway

8

STATE OF MICHIGAN

SUPREME COURT

STEVEN KING,

       Plaintiff-Appellee,

v

No. 140684

STATE OF MICHIGAN, MICHIGAN
DEPARTMENT OF LABOR AND
ECONOMIC GROWTH, and
COMMISSIONER OF THE OFFICE OF
FINANCIAL AND INSURANCE
REGULATION,

       Defendants-Appellants.

_____

CAVANAGH, J. (*concurring*).

I concur in affirming the judgment of the Court of Appeals, but write separately to express my view that the Office of Financial and Insurance Services (OFIS)[1] may not—in the absence of additional cause—revoke plaintiff's license solely on the basis of the fully disclosed and waived felony conviction known to OFIS when it issued plaintiff's license in 2004. I would additionally hold that a governmental licensing agency is estopped from revoking a license solely on the basis of the same fully disclosed and accurate facts for which it had previously granted an express waiver if the licensee has reasonably relied to his detriment on the license issued.

---

[1] Now known as the Office of Financial and Insurance Regulation.

First, I note that the stark conflict between MCL 500.1205(1)(b) and MCL 500.1239 as it existed in 2004 creates an ambiguity. Compare MCL 500.1205(1)(b) ("license shall not be approved") with the 2004 version of MCL 500.1239 ("the commissioner may . . . refuse to issue [a] . . . license"). One provision allows discretionary licensing of convicted felons; the other precludes all discretion. By even the narrowest definition of ambiguity, the statutory provisions at issue here are ambiguous because "one ['irreconcilably conflicts'] with another . . . ." *Petersen v Magna Corp*, 484 Mich 300, 311 & n 23; 773 NW2d 564 (2009), quoting *Lansing Mayor v Pub Serv Comm*, 470 Mich 154, 166; 680 NW2d 840 (2004).[2]

Defendants argue that the mandatory-denial provision applies only to resident insurance producers, whereas the discretionary-denial provision would apply to nonresident insurance producers. Statutes, however, "must be construed to prevent absurd results . . . ." *People v Tennyson*, 487 Mich 730, 741; 790 NW2d 354 (2010) (quotation marks and citation omitted). An interpretation of a statute is absurd when "it is clearly inconsistent with the purposes and policies of the act in question." *Cameron v Auto Club Ins Ass'n*, 476 Mich 55, 128-129; 718 NW2d 784 (2006) (KELLY, J., dissenting). One of the main purposes animating our statutory insurance scheme is to protect Michigan citizens from unscrupulous insurers. See title of 1956 PA 218 ("An

---

[2] I continue to adhere to the definition of "ambiguity" expressed in Chief Justice KELLY'S lead opinion in *Petersen*, 484 Mich at 329 (stating that ambiguity exists "'when a statute is capable of being understood by reasonably well-informed persons in two or more different senses'") (citation omitted). But because the statute at issue here is ambiguous under any standard, it is unnecessary to consider this issue further.

act . . . to provide for the protection of policyholders, claimants, and creditors of unsound or insolvent insurers . . . ."); *In re Certified Question*, 413 Mich 22, 38; 319 NW2d 320 (1982) ("The extensive regulation of the insurance industry provided for in [the Insurance Code] indicates a legislative purpose to protect policyholders."). It would indeed be an absurd result to conclude that the Legislature intended to allow discretionary licensing of out-of-state felons to sell insurance in Michigan while mandating that no licenses could be issued to resident felons. Such an intention would provide *less* protection to Michigan policyholders, in direct conflict with the purposes animating the Insurance Code. The state is much better equipped to exercise oversight of in-state insurance producers, to discipline them when necessary, and to bring them and their property within reach of the Michigan courts. I therefore decline to adopt an absurd interpretation of the licensing provisions in order to avoid a finding of ambiguity.

Second, I believe that equitable remedies may be available when a statute is ambiguous. See *Stokes v Millen Roofing Co*, 466 Mich 660, 672; 649 NW2d 371 (2002) (opinion by WEAVER, J.)

Third, a court may, in its sound discretion, grant equitable relief if no legal remedy is available or if an available remedy at law is doubtful or uncertain. See *Tkachik v Mandeville*, 487 Mich 38, 45; 790 NW2d 260 (2010), quoting *Powers v Fisher*, 279 Mich 442, 448; 272 NW 737 (1937); *Edsell v Briggs*, 20 Mich 429, 433 (1870). In the instant case, the only statutory remedy available to plaintiff after revocation is an administrative appeal to "determine the reasonableness of the commissioner's action." MCL 500.1239(2). Because defendants argue that they *must* revoke plaintiff's license,

3

however, the only "reasonableness" determination to be made at such an appeal would be whether the commissioner reasonably concluded that plaintiff had a felony conviction. Because there is no question that the felony conviction exists—as plaintiff fully disclosed—the licensing statutes provide him no meaningful remedy whatsoever.

Fourth, in certain cases, equitable estoppel may be an appropriate remedy where one party has changed its position in reasonable reliance on a governmental mistake. See, e.g., *Pittsfield Twp v Malcolm*, 375 Mich 135, 147-148; 134 NW2d 166 (1965) (estopping a municipality from enforcing its zoning regulations against a kennel owner who was erroneously issued a building permit after he had relied on the permit and built a kennel). There is no question here that plaintiff has reasonably relied on the license issued to develop a career and that revocation would cause plaintiff an extreme detriment.

I would thus hold that a governmental licensing agency is estopped from revoking a license solely on the basis of the same fully disclosed and accurate facts for which it had previously granted an express waiver if the licensee has reasonably relied to his detriment on the issued license. The language "fully disclosed and accurate" requires that the licensing agency have before it all the information necessary when making its decision to grant a waiver. The phrase "reasonably relied" is equally important. Contrary to the dissent's concerns, I cannot imagine a situation in which it would be reasonable for a child molester who was issued a daycare license or a dangerous felon who was issued a license to carry a firearm to rely on such a wrongfully issued license. The situation here is vastly different. First, all the materials available to the public at the time plaintiff applied for his license indicated that a waiver of felony convictions was

4

possible.[3] Indeed, defendants informed plaintiff that a waiver was possible. In addition, the waiver letter that OFIS sent to plaintiff expressly indicated that OFIS was fully aware of plaintiff's felony conviction when granting the waiver. Plaintiff had absolutely no reason to think that the waiver was not available or that it was improperly granted when he relied on the license issued to invest years of his life developing a career. Conversely, a convicted child molester or violent felon would have little reason to believe that he or she would be eligible for a daycare or firearms license.

A court's discretionary use of equity allows "complete justice" to be done. *Tkachik*, 487 Mich at 46 (quotation marks and citation omitted). Achieving "complete justice" necessarily requires a court to examine and balance competing interests. It is beyond cavil that the need to protect children from child molesters would outweigh any interest of a child molester in keeping an erroneously issued license and the need to protect society from dangerous felons would outweigh any interest the felon has in keeping such a license. Any arguments posited that the rule I would apply to this case could allow such absurd results is pure hyperbole.

---

[3] The Court of Appeals noted (1) that the agency's interpretation of the licensing statute in *Mazur v Office of Fin & Ins Servs*, Case No. 03-384-L, Docket No. 2003-1515 (May 14, 2004), had not been published or communicated to the public in the form of a rule, new guideline, or OFIS letter or directive, (2) that the interpretation was never communicated internally at OFIS, and (3) that waivers of felony convictions remained possible following *Mazur*. *King v Michigan*, unpublished opinion per curiam of the Court of Appeals, issued January 21, 2010 (Docket No. 288290), p 2.

Accordingly, I concur in affirming the judgment of the Court of Appeals.


Michael F. Cavanagh
Marilyn Kelly

STATE OF MICHIGAN

SUPREME COURT

STEVEN KING,

       Plaintiff-Appellee,

V

       No. 140684

STATE OF MICHIGAN, MICHIGAN
DEPARTMENT OF LABOR AND
ECONOMIC GROWTH, and
COMMISSIONER OF THE OFFICE OF
FINANCIAL AND INSURANCE
REGULATION,

       Defendants-Appellants.

_____

YOUNG, J. (*dissenting*).

This case requires this Court to interpret the relevant licensing provisions of the

amended Insurance Code, which preclude persons who have been convicted of a felony

from receiving a resident insurance producer license, in the context of the entire

Insurance Code. In this case, the Office of Financial and Insurance Services (OFIS)[1]

failed to discharge its statutory duties and enforce relevant statutory mandates when it

granted plaintiff an insurance license in 2004, despite plaintiff's previous conviction of a

felony. The decision by OFIS to seek revocation of that license, while unfortunate for the

improperly licensed plaintiff, is nonetheless proper because the original licensure was

_____

[1] The Office of Financial and Insurance Services has since been reorganized and is now
part of the Official of Financial and Insurance Regulation, one of the named defendants
in this case.

invalid. Governmental administrators, like those in OFIS, cannot act in derogation or contravention of their statutory authority when issuing licenses. Because the majority justices fail to render meaning to all relevant provisions of the Insurance Code by holding contrarily, and thereby exercise judicial power to avoid the application of a valid statute, I respectfully dissent.

## I. ANALYSIS

## A. STATUTORY ANALYSIS

This case requires that we interpret the Insurance Code—specifically MCL 500.1205 and MCL 500.1239—as it existed in 2004. When "interpreting statutory language, this Court's primary goal is to give effect to the Legislature's intent. If the Legislature has clearly expressed its intent in the language of a statute, that statute must be enforced as written, free of any 'contrary judicial gloss.'"[2]

MCL 500.1205 governs the licensing of insurance agents who reside in Michigan; in 2004, MCL 500.1205(1) provided, in relevant part:

> An application for a *resident* insurer [sic] producer license **shall not be approved** unless the commissioner finds that the individual meets all of the following:
>
> \* \* \*

---

[2] *Dep't of Agriculture v Appletree Mktg, LLC*, 485 Mich 1, 8; 779 NW2d 237 (2010), quoting *Morales v Auto-Owners Ins Co (After Remand)*, 469 Mich 487, 490; 672 NW2d 849 (2003) (citation omitted).

2

(b) Has not committed any act that is a ground for denial, suspension, or revocation under [MCL 500.1239].[3]

In 2004, MCL 500.1239 provided, in relevant part:

(1)In addition to any other powers under this act, the commissioner *may* place on probation, suspend, *revoke,* or refuse to issue an insurance producer's license or may levy a civil fine under [MCL 500.1244] or any combination of actions *for any 1 or more of the following causes*:

\* \* \*

(f) *Having been convicted of a felony.*[4]

At its most basic level, this case turns on the answer to a single question: in 2004, did these provisions of the Insurance Code prohibit OFIS from issuing a resident insurance producer license to an applicant who had been convicted of a felony? Defendant OFIS argues that these provisions *required* OFIS to deny plaintiff a license because he had been convicted of a felony. Plaintiff argues, however, that these provisions, when read together, did not constitute a statutory mandate that required OFIS to deny plaintiff a license, and therefore OFIS is equitably estopped from revoking it now. Thus, the primary dispute here is whether OFIS was mandated by statute to reject plaintiff's application in 2004, or whether OFIS had discretion to approve or reject the application at that time. If defendants' statutory interpretation is correct and the Insurance Code mandated that OFIS not grant licenses to former felons, then there exists a clear statutory mandate that neither equity nor this Court can avoid. In that situation,

---

[3] (Italics and bold added.)

[4] (Emphasis added.)

OFIS must be allowed to retract the license that should not have been issued in the first place. For the reasons set forth below, I agree with defendants.

If MCL 500.1205(1)(b) is read in isolation, there is no question that OFIS cannot issue a license to a convicted felon. In effect, it provides that an application for a *resident* insurance producer license *shall not be approved unless* the commissioner finds that the individual *has not committed a felony*. Here, OFIS approved a license without making the requisite finding that plaintiff had not committed a felony. Indeed, the opposite is true: OFIS *knew* that plaintiff had in fact committed a felony, as plaintiff honestly disclosed and as OFIS recognized in the letter it sent to plaintiff when informing plaintiff that he was being granted a "waiver."

However, MCL 500.1205(1)(b) cannot be read in isolation, but must be interpreted in light of the language of MCL 500.1239(1)(f), to which it makes direct reference. By itself, MCL 500.1239(1)(f) permits the OFIS commissioner to refuse to issue a license when an applicant has a felony conviction, but it does not forbid OFIS to grant the license as MCL 500.1205 does.

The OFIS commissioner resolved the apparent conflict between MCL 500.1205 (no discretion) and MCL 500.1239 (some discretion) in favor of applying the "no discretion" standard of MCL 500.1205 because it is "more particular" and "particularly concerned with establishing standards for licensure."[5] The commissioner's *Mazur* decision attempted to establish harmony between the two statutes by concluding that

---

[5] *Mazur v Office of Fin & Ins Servs*, Case No. 03-384-L, Docket No. 2003-1515 (May 14, 2004), p 3.

4

OFIS must exercise the discretion conferred by MCL 500.1239(1) in light of the standards conferred by MCL 500.1205(1)(b).

I would hold that OFIS correctly resolved the apparent conflict between MCL 500.1205 and MCL 500.1239 in the way that most closely adheres to the Legislature's stated intent.[6] In coming to this conclusion, it is necessary to consider the entire statutory structure of the licensing provisions in the Insurance Code. As noted, MCL 500.1205 governs the licensing of *resident* insurance producers for individuals who reside in Michigan. The Insurance Code also allows the licensing of *nonresident* insurance producers who are licensed in another state but transact business in Michigan, which is separately governed by MCL 500.1206a.[7] MCL 500.1239 applies both to resident *and* nonresident insurance producers.

---

[6] *Mazur* is a nonbinding administrative decision. Nevertheless, when interpreting a statute that a governmental agency has the power to interpret and duty to enforce, this Court accords

> "respectful consideration" for the agency's statutory interpretation, and will provide "cogent reasons" for overruling an agency's interpretation. Furthermore, when the law is "doubtful or obscure," the agency's interpretation is an aid for discerning the Legislature's intent. However, the agency's interpretation is not binding on the courts, and it cannot conflict with the Legislature's intent as expressed in the language of the statute at issue. [*In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 103; 754 NW2d 259 (2008), citing and quoting *Boyer-Campbell Co v Fry*, 271 Mich 282; 260 NW 165 (1935).]

Contrary to the standard cited in the lead opinion, see *ante* at 5, *Rovas* and *Boyer-Campbell* remain good law and therefore articulate the proper standard by which this Court reviews an administrative agency's interpretation of a statute. See generally *Rovas*, 482 Mich at 104-109.

[7] Individuals who receive *nonresident* insurance producer licenses are subject to separate requirements to obtain and maintain a license that are different from applicants from

5

The Legislature has chosen to apply differing standards to resident and nonresident insurance producers. While MCL 500.1205 provides that a resident applicant "*shall not*" be licensed if he has committed an act described in MCL 500.1239, MCL 500.1206a(1) contrarily provides that "[*u*]*nless denied licensure under* [*MCL 500.1239*], a nonresident person *shall* receive a nonresident insurance producer license . . . ."[8] Thus, the Legislature specifically used discretionary language in MCL 500.1239 to permit the commissioner to determine, in his discretion, whether to "refuse to issue an insurance producer's license" to a *nonresident* applicant who has been convicted of a felony. At the same time, the Legislature *prohibited* such issuance to resident applicants by using mandatory language in MCL 500.1205.

This interpretation avoids rendering any language nugatory or mere surplusage.[9] In particular, it accords meaning both to MCL 500.1205 and MCL 500.1239. The primary purpose of MCL 500.1239 is to provide grounds for probation, suspension, revocation, *or* refusal to issue a license. Thus, under this interpretation, every word in MCL 500.1239 has meaning because its provisions cover when OFIS may take disciplinary action against a licensee and its provisions covering initial licensing clearly refer to nonresident applicants. MCL 500.1205, on the other hand, covers *solely* the

---

Michigan who receive resident insurance producer licenses. See, generally, MCL 500.1204e and MCL 500.1206a.

[8] (Emphasis added.)

[9] See *Wickens v Oakwood Healthcare Sys*, 465 Mich 53, 60; 631 NW2d 686 (2001) (observing that this Court must "avoid a construction that would render any part of the statute surplusage or nugatory").

6

initial licensing of resident agents, and it merely incorporates by reference the *requirements* of MCL 500.1239, *not* its discretionary standard. By according meaning to each of these statutory provisions, it becomes clear that the Legislature wished to provide *no discretion* to the commissioner when licensing individuals from Michigan, but allow the commissioner to retain *some* discretion in taking disciplinary action or in licensing a nonresident applicant. Therefore, the statutory scheme removes the discretion explicitly contemplated in MCL 500.1239 in the initial licensing phase for resident applicants, but does not render it nugatory for all purposes.

Further, this construction is in accord with the rule of statutory construction providing that where "'a statute contains a general provision and a specific provision, the specific provision controls.'"[10] When read together, the mandatory standard of MCL 500.1205 controls over the discretionary standard of MCL 500.1239 because it is more specific: MCL 500.1205 exclusively addresses the *issuance* of resident insurance producer licenses, whereas MCL 500.1239 includes language regarding probation, suspension, issuance of civil fines, revocation of insurance licenses, and issuance of

---

[10] *Jones v Enertel, Inc*, 467 Mich 266, 270; 650 NW2d 334 (2002), quoting *Gebhardt v O'Rourke*, 444 Mich 535, 542-543; 510 NW2d 900 (1994); see also *People v Ellis*, 224 Mich App 752, 756; 569 NW2d 917 (1997) ("The specific statute is treated as an exception to the general one."). This Court has further explained that "[i]n order to determine which provision is truly more specific and, hence, controlling, we consider which provision applies to the more narrow realm of circumstances, and which to the more broad realm." *Miller v Allstate Ins Co*, 481 Mich 601, 613; 751 NW2d 463 (2008).

Of note, the applicable versions of both MCL 500.1205 and MCL 500.1239 became effective March 1, 2002, and therefore the rule of statutory interpretation that the latter enacted statute prevails in the face of a statutory conflict is inapposite in this case.

7

nonresident licenses. Because it relates to discipline generally, MCL 500.1239 thus has a broader application that cannot displace the standard of MCL 500.1205, which is specific to licensing resident insurance producers. Similarly, this specific directive controls over the general provision in MCL 500.205 that OFIS must act within the reasonable exercise of its discretion when making decisions or reaching conclusions.[11]

The lead and concurring opinions fail to consider the entire structure of the Insurance Code when coming to their respective conclusions that the code allows a discretionary standard to be applied to nonresident applicants, and that the code is ambiguous. As the above analysis demonstrates, and contrary to the argument made by the concurring justice, these statutory provisions are reconcilable and thus certainly not ambiguous.[12] "Conflicting provisions of a statute must be read together to produce an harmonious whole and to reconcile any inconsistencies wherever possible."[13] A statute is

---

[11] MCL 500.205 generally directs that "[o]rders, decisions, findings, rulings, determinations, opinions, actions, and inactions of the commissioner in this act shall be made or reached in the reasonable exercise of discretion." For the reasons stated in the text, I reject the lead opinion's representation of MCL 500.205 as trumping the limitations imposed by MCL 500.1205.

[12] The concurring justice merely notes the conflict in wording, but provides absolutely *no* attempt at statutory interpretation or reconciliation of the separate statutory provisions before declaring that the statutes "irreconcilably conflict[]" with each other. See *ante* at 2 (CAVANAGH, J., concurring) (citation and quotation marks omitted). Nor does the concurring justice accord any significance to the fact that the code treats resident and nonresident applicants under separate standards, instead merely finding this Legislative choice "absurd."

[13] *World Book, Inc v Dep't of Treasury*, 459 Mich 403, 416; 590 NW2d 293 (1999).

8

not ambiguous simply because it is susceptible to more than one interpretation.[14] Such an inexact standard would simply leave too much legislative work product open to reinterpretation or unwarranted intervention by the judiciary, as this case illustrates. Under this opinion's analysis, every provision of the code—including both the mandatory standard of MCL 500.1205 and the discretionary standard of MCL 500.1239—is accorded its plain meaning, but only when done with the understanding that there are two types of insurance producers licensed in Michigan and the code treats them differently. The lead and concurring opinions simply do not account for this.

Moreover, plaintiff's contrary attempt to reconcile these statutory provisions is not convincing. Plaintiff chiefly argues that OFIS has the discretion to determine whether grounds exist to deny a license and thus may "find" that an applicant has not committed a felony for the purposes of licensing. However, the relevant factual inquiry that OFIS must undertake does not leave room for ambiguity: either an applicant has been convicted of a felony or he has not. If the applicant has been convicted of a felony, the commissioner can hardly be said to have the discretionary power to "find" that he has not been convicted of a felony. Indeed, a decision so out of accord with reality would clearly constitute obvious error requiring reversal.

Aside from failing to consider the entire structure and separate provisions of the Insurance Code, the lead opinion's statutory analysis does not otherwise withstand scrutiny. The lead opinion generally concludes that OFIS initially had broad discretion to

---

[14] See, e.g., *Lansing Mayor v Pub Serv Comm*, 470 Mich 154, 166; 680 NW2d 840 (2004).

render its licensing decision, but that the 2002 amendments to the Insurance Code replaced the "nebulous environment" in which OFIS made its decisions with the current "framework" in which OFIS now makes its decisions.[15] This argument appears to be little more than judicial gloss masking as interpretation in derogation of this Court's stated duty to determine *the Legislature's* intent.[16]

The lead opinion fails to explain *how* the relevant statutory provisions are "read *together*,"[17] and *why*, when the various statutory provisions are read together, they should not be construed as having required OFIS to deny plaintiff's license.[18] Nor does the lead opinion employ or discuss any of the traditional canons of construction that guide this Court's interpretation of statutes. Instead, the majority justices simply and summarily reject defendants' argument, but support this conclusion with little else than their own ipse dixit.

---

[15] *Ante* at 5.

[16] See *Wayne Co v Hathcock*, 471 Mich 445, 456; 684 NW2d 765 (2004) ("In interpreting this statutory language, this Court's primary goal is to give effect to the Legislature's intent. If the Legislature has clearly expressed its intent in the language of a statute, that statute must be enforced as written, free of any 'contrary judicial gloss.'") (citation omitted); *In re Certified Question from the United States Court of Appeals for the Sixth Circuit*, 468 Mich 109, 119; 659 NW2d 597 (2003) ("The imposition of a contrary judicial gloss is inappropriate where the Legislature has clearly expressed its intentions in the words of the statute.").

[17] *Ante* at 4.

[18] The lead opinion similarly determines that the *Mazur* decision "was incorrect" with, literally, no explanation why. See *ante* at 6.

10

Perhaps more egregious, the lead opinion's ultimate interpretation fails to accord meaning to *all* the words of the statute. In particular, the statement in MCL 500.1205 that the insurance license "*shall not* be approved" if the applicant has been convicted of a felony is rendered functionally without meaning by the lead opinion's interpretation.[19] Nor do the majority justices who join either the lead or concurring opinions accord any significance to the fact that the code treats resident and nonresident applicants under separate standards, or address why this fact does not resolve the apparent conflict in the statutory provisions as discussed above. Moreover, the admonition of MCL 500.205 that OFIS must not abuse its discretion when making decisions can hardly be said to allow OFIS to make whatever determination it feels is reasonable under the circumstances given that the Legislature has instructed in MCL 500.1205(1) that OFIS "shall not" take certain action. Nevertheless, the majority justices read these general statements in such a way as to displace the more specific statutory provisions.

## B. ANALYSIS OF THIS COURT'S PRIOR CASES

This Court has long held in cases involving similar licensing decisions that revocation procedures must be invoked if a license was granted in excess of an agency's statutory authority. As far back as the early twentieth century, this Court decided that a facially valid license that was nevertheless issued in violation of a statute should be revoked.[20] In *Gamble v Liquor Control Comm*, this Court reaffirmed that principle,

---

[19] (Emphasis added.)

[20] See *George v Travis*, 185 Mich 597; 152 NW 207 (1915).

11

stating that the proper question before a court in such cases is to determine whether the license was issued in violation of the relevant statute.[21] Having determined that it was, the Court held that the license should have been revoked.[22] In *Elliott v Liquor Control Comm*, having determined that granting the plaintiff a license in that case was "forbidden," the commission was "required to revoke, rescind and cancel the license heretofore issued . . . ."[23] Similarly, the Court applied *Elliott* in *Big Bear Markets of Mich, Inc v Mich Liquor Control Comm*, holding that the plaintiff's license "was improperly granted and was, in consequence, subject to revocation" notwithstanding a showing that the party that the statute was designed to protect was willing to waive its

---

[21] 323 Mich 576, 579; 36 NW2d 297 (1949).

[22] *Id.* at 580. This case, like others at the time, held that a licensee has no vested or property interest in a license and that due process protections are not necessary to revoke a license. As defendant correctly note, courts have since held that a licensee has a vested property interest in the license, which entitles the holder to due process protections. See, e.g., *Bundo v Walled Lake*, 395 Mich 679; 238 NW2d 154 (1976). This latter change in the law does not render the earlier decisions irrelevant. Specifically, recognizing that licenses provide an interest to the licensee and that a licensee is entitled to due process protections before revocation does not affect the analysis regarding the revocation of invalid licenses, although revocations must now comport with due process. Moreover, courts have held only that a person is entitled to *procedural* due process in these situations. See generally *Bundo*. Thus, a licensee is entitled to timely written notice detailing the reasons for the proposed administrative action, an effective opportunity to defend and present supportive evidence, and a statement of findings. *Bundo*, 395 Mich at 696-697. This "rudimentary" due process balances the interests of a person who has invested in a license that is necessary for his livelihood with the community's interest in proper regulation. *Id.* at 696; see also *Bois Blanc Island Twp v Natural Resources Comm*, 158 Mich App 239; 404 NW2d 719 (1987). Therefore, improperly issued licenses— including the one issued to plaintiff here—may be revoked as long as the licensee is accorded procedural due process.

[23] 339 Mich 78, 82-83; 62 NW2d 594 (1954).

rights under the statute.[24]  In *Kassab v Acho*, the Court of Appeals more recently reaffirmed these principles, stating:

> [The defendant-licensee] argues that the commission has the authority to continue the license on the ground of manifest injustice.  We disagree.  As an agency, the commission has no inherent powers and, therefore, any authority must come from the Legislature.  The commission's plenary power to regulate liquor traffic is subject to statutory restraints.  The commission's rules and regulations, promulgated pursuant to the Liquor Control Act, MCL 436.7; MSA 18.977, prohibit the commission from issuing an SDD license in violation of the one-half[-]mile rule.  None of the exceptions to the rule applied and, thus, the commission had no discretion to waive the rule.  Where a liquor license is issued in violation of a statute, it must be revoked.  Manifest injustice is not a means by which the commission may avoid legislative mandate as well as its own regulations.[25]

In short, these cases have continually reaffirmed the principle that a governmental entity cannot act in contravention of its statutory powers.  When an agency does not act in accordance with its limited statutory powers, its decision should not stand, even if that action will result in a harsh outcome.

This principle is particularly important because of the structure of our government, which provides for a separation of powers among the three branches. This system requires that the Legislature and Governor make policy choices and that the courts enforce those political decisions as written.  In this case, because the statute as written at the time of plaintiff's licensing in 2004 mandated that OFIS decline to license anyone who had been convicted of a felony, OFIS should not have licensed plaintiff, and this

---

[24] 345 Mich 569, 576; 77 NW2d 135 (1956).

[25] 150 Mich App 104, 112-113; 388 NW2d 263 (1986) (citations omitted).

Court *cannot* use equity to displace the *statutory mandate* or otherwise validate that improper decision.

This Court has reaffirmed this basic principle underlying the separation of powers throughout its history. In *Stokes v Millen Roofing Co*, this Court held the trial court's analysis invalid because "equity is invoked to avoid application of a statute. Courts must be careful not to usurp the Legislative role under the guise of equity because a statutory penalty is excessively punitive."[26] As this Court elaborated in *Bilt-More Homes, Inc v French*, and readopted in *Stokes*, it is not a court's place

> to begin the process of attrition whereby, in appealing cases, the statutory bite is made more gentle, until eventually the statute is made practically innocuous and the teeth of the strong legislative policy effectively pulled. If cases of such strong equities eventually arise that the statute does more harm than good the legislature may amend it . . . .[27]

Similarly, in *Martin v Secretary of State*, this Court again reaffirmed the guiding principle that courts cannot use equity to displace a statutory requirement designed by the Legislature.[28] There, the plaintiff was a candidate for elective office who had been misled by the Secretary of State regarding the number of signatures needed to qualify to be placed on the ballot. As a consequence, he failed to collect enough signatures by the

---

[26] *Stokes v Millen Roofing Co*, 466 Mich 660, 671-672; 649 NW2d 371 (2002).

[27] *Bilt-More Homes, Inc v French*, 373 Mich 693, 699; 130 NW2d 907 (1964) (quotation marks and citation omitted), quoted and reaffirmed in *Stokes*, 466 Mich at 672.

[28] 482 Mich 956 (2008), adopting the opinion in relevant part of Judge O'CONNELL, in *Martin v Secretary of State*, 280 Mich App 417, 430; 760 NW2d 726 (2008) (O'CONNELL, P.J., dissenting).

14

statutory deadline and the Secretary of State refused to place his name on the ballot. We explained that courts could not use equity to compel the government to perform an act that the law clearly forbid, even when the state itself was the root cause of the problem—as is the case here.[29] Moreover, our decision affirmed that an administrative agency is not permitted to expand its own authority beyond what the Legislature granted. As Justice MARKMAN explained,

> it is not 'manifestly unjust' for this Court to conclude that the plain words of a law enacted by the Legislature cannot be modified by a clerk in the Secretary of State's office (or indeed by the Secretary of State herself). . . . There cannot be as many laws as there are public servants who dispense guidance or advice on the meaning of the law." [30]

It would indeed be a strange system of government if every administrator or bureaucrat had the power to make decisions in derogation of the limited statutory powers provided by the Legislature. Yet the lead and concurring justices would essentially give every governmental bureaucrat the extraordinary power to countermand what the Legislature has proscribed. It is an abrogation of the legitimate exercise of judicial power to allow agency decisions to be the ultimate authority in licensing when those decisions are made in a manner contrary to a legislative mandate.

In contravention of these principles, both plaintiff and the concurring justice cite approvingly *Pittsfield Twp v Malcolm* for the proposition that there are cases that present "exceptional circumstances" whereby courts may employ equity to avoid unjust results.[31]

---

[29] See *Martin*, 482 Mich at 956-957 (YOUNG, J., concurring).

[30] *Id.* at 957 (MARKMAN, J., concurring).

[31] 375 Mich 135, 144-148; 134 NW2d 166 (1965).

15

*Malcolm* is indicative of the occasional discord in this Court's caselaw. In particular, it characterizes the unevenness by which this Court has occasionally treated the interplay between positive law and equity over the course of its history. However, I do not believe that the holding of *Malcolm* can overcome the general prohibition against applying equity to circumvent a statutory mandate, nor can it overcome the more applicable line of cases from this Court requiring improperly issued licenses to be revoked. Additionally, *Malcolm* is largely distinguishable on its facts because it involved a local zoning ordinance—under which discretionary exceptions (zoning variances) are often sought and obtained—and did not involve a legislatively enacted mandate. Similarly, the plaintiff's and the Court of Appeals' reliance on *Kern v City of Flint*,[32] is inapposite, even if it remains good law, because equity was used there to prevent the enforcement of terms in a contract. The Court in *Kern* did *not* use equity to overcome a *statutory* mandate, which implicates the Legislature's constitutional authority to make policy for the citizens of this state.

On the basis of my statutory construction, which I believe properly accords meaning to *all* the Legislature's chosen words in the relevant statutes and considers the *entire* structure of the Insurance Code, I would hold that the Court of Appeals erred by failing to analyze the relevant statutory provisions as they existed in 2004 and then invoking equity to avoid the result of that analysis.

---

[32] 125 Mich App 24; 335 NW2d 708 (1983).

## I. RESPONSE TO THE LEAD OPINION'S ADDITIONAL ARGUMENTS

The lead opinion asks and answers three questions, only one of which is actually necessary for the disposition of this case: did the Insurance Code expressly prohibit OFIS from issuing a license to plaintiff in 2004? As discussed earlier, the lead opinion refuses to engage in any meaningful statutory construction in answering this question and thereby draws a conclusion that fails to give effect to all the words of the relevant statute. The lead opinion then engages in a discussion of two questions—whether OFIS is required to revoke plaintiff's license and whether OFIS may revoke plaintiff's license under the statute as currently written—that no party or justice disputes. In short, the lead opinion's cursory attempt at statutory interpretation and other analysis theoretically supporting its disposition in this case does not scour.

The lead opinion asks "whether the commissioner is now *required* by statute to affirmatively revoke plaintiff's license on the basis of the same prior felony."[33] As far as I can tell, no party or justice disputes that the answer to this question is quite obviously "no," nor is the answer to this question relevant to a disposition here. OFIS admits that it does not seek to revoke plaintiff's license on the basis of any post-licensure conduct by plaintiff, nor does OFIS argue that the statute, as it is currently written, requires revocation. Instead, OFIS argues that because it was illegal to license plaintiff in the first place under the statute *as it existed in 2004*, the issuance of the license was outside OFIS's administrative authority and the license therefore must be revoked.

---

[33] *Ante* at 2.

17

Additionally, the lead opinion asks "whether the commissioner is now *permitted* to revoke plaintiff's license on the basis of the same prior felony." It then curiously and circularly answers this question by stating that "the commissioner may not revoke a license on the basis of the erroneous belief that he must do so when, in fact, he has discretion."[34]

Again, the question posed and answer provided by the lead opinion is irrelevant to the actual argument that OFIS makes as authority for its ability to revoke plaintiff's license in the instant case. As OFIS argued in its brief and as OFIS's attorney readily noted at oral argument, the OFIS commissioner in this case is not exercising his discretionary authority under MCL 500.1239. Instead, counsel for OFIS urged at oral argument that the commissioner was

> being guided by the mandatory language of [MCL 500.]1205 and further guided by this Court's decisions in similar licensing cases where this Court has clearly said when a license is granted in excess of the statutory authority or in violation of it, it's not discretionary and the agency is bound to revoke it.

> \* \* \*

> [While] *procedurally* this is a revocation proceeding, . . . the revocation proceeding is touched off by the grant of an improper license. So it's not – this proceeding is not governed by the normal discretionary standard for revocation *because the license here was never validly issued by the agency*.

Indeed, counsel for OFIS further admitted that if this were a typical revocation proceeding governed by the discretionary standard employed in such proceedings, then

---

[34] *Ante* at 8.

18

the commissioner would have "no grounds to revoke Mr. King's license . . . ." However, as OFIS argues and the above analysis demonstrates, that does not dispose of the true issue in this case: whether the statute, as it was written in 2004, mandated that plaintiff not be given a license, thus making his subsequent licensure invalid. And as previously discussed, this Court's caselaw has continually reaffirmed that even though statutory revocation provisions may be written as discretionary, those revocation procedures *must* be invoked if the original license was granted in excess of an agency's authority.

By invoking a premise that OFIS readily concedes and by ignoring the argument OFIS actually proffers in defense of its action here, the author of the lead opinion renders an opinion that is largely unresponsive to the issues raised by this appeal. This error is further complicated by the fact that the lead opinion declines to address whether equity may otherwise be invoked to save plaintiff's license. Indeed, the lead opinion makes "no pronouncement about whether equity applies here or what effect it might have."[35] It does so notwithstanding the fact that the linchpin of plaintiff's entire argument is that OFIS is *equitably estopped* from revoking his license because of plaintiff's truthful disclosure of his felony and OFIS's full review and waiver of the same. Similarly, equity was also the only basis on which the lower courts rendered their decisions. However, as the above statutory analysis demonstrates, and contrary to the concurring justice's position, *equity cannot be properly invoked in this case because the statute mandates a particular outcome*. The lead opinion avoids this established principle by disclaiming that it is

---

[35] *Ante* at 8.

using equity even though its statutory analysis fails to establish a sufficient and alternative basis to do so.

Finally, the lead opinion also fails to distinguish (or even discuss) any of the relevant caselaw holding that a license issued in violation of a statute should be revoked. Nor do the justices joining the lead and concurring opinions appear willing to recognize the implications of their decision today, and I question whether those justices would draw the same conclusions if plaintiff here were less sympathetic. Consider, for example, a convicted child molester who received a license to open a daycare center, contrary to a clear statutory mandate preventing such licensure.[36] Would the majority justices here prevent the government from revoking the invalid license? Similarly, consider a dangerous felon who was inappropriately and illegally provided a license to carry a firearm, contrary to the clear statutory mandate preventing such licensure[37] and the fact that possession of a firearm by such a person is a separate crime punishable by up to five years in prison.[38] Would the majority justices here allow the felon to retain his firearm license? In these scenarios, would the concurring justices in particular still unequivocally "hold that a governmental licensing agency is estopped from revoking a license solely on the basis of the same fully disclosed and accurate facts for which it had previously granted an express waiver if the licensee has reasonably relied to his detriment on the

---

[36] See MCL 722.115g(3).

[37] See MCL 28.425b; MCL 28.425b(7)(f) and (11).

[38] See MCL 750.224f.

20

issued license"?[39]  Indeed, such a rule has the potential to establish an untenable state of affairs in which every bureaucrat would become a king unto himself whose decisions— no matter how contrary to established law—are insulated from challenge.

## III. CONCLUSION

The proper interpretation of the relevant statutory provisions as articulated in this dissent would admittedly produce a result in this case that is harsh for this plaintiff who properly disclosed a condition that made him ineligible for the license he was improvidently granted.  While this result is unfortunate for this particular plaintiff, it is also what the law requires.  The inflexibility *purposely built into this statute* by the Legislature and approved by the Governor is the result of policy determinations made by those political branches of government.[40]  Save those statutes that are an affront to the

---

[39] *Ante* at 1 (CAVANAGH, J., concurring).

[40] The purposefulness of this inflexibility and the bright-line nature of this rule was reaffirmed when the Legislature amended MCL 500.1239(1) in 2009 in order to remove any dispute that OFIS *must* deny convicted felons a license to be a resident insurance producer.  MCL 500.1239 now provides:

> (1)  In addition to any other powers under this act, the commissioner may place on probation, suspend, or revoke an insurance producer's license or may levy a civil fine under section 1244 or any combination of actions, *and the commissioner shall refuse to issue a license under section 1205* or 1206a, for any 1 or more of the following causes:

> \* \* \*

> (f)  Having been convicted of a felony.  [Emphasis added.]

This amended language *unanimously* passed *both* chambers of the Michigan Legislature, and was signed into law by Governor Granholm on January 5, 2009.  See 2008 PA 423.

21

constitution, no court can employ its limited judicial power to overcome a valid statutory mandate. Nor can the rule of law, as prescribed by MCL 500.1205(1)(b) when read in the context of MCL 500.1239(1) and MCL 500.1206a, be displaced by the actions of OFIS administrators. An administrative agency may exercise only the powers provided to it and must act within the parameters conferred upon it by statutory law.[41] Action in excess of these powers or outside these parameters in situations in which the Legislature has mandated a specific outcome is not valid. Because the majority justices here effectively sanction such impermissible conduct, I dissent.

Robert P. Young, Jr.
Maura D. Corrigan
Stephen J. Markman

---

[41] See, e.g., *Union Carbide Corp v Pub Serv Comm*, 431 Mich 135, 146; 428 NW2d 322 (1988); *Mason Co Civic Research Council v Mason Co*, 343 Mich 313, 326-327; 72 NW2d 292 (1955); *Taylor v Pub Utilities Comm*, 217 Mich 400, 402-403; 186 NW 485 (1922).