YOUNGS *v.* WEST.

1. EQUITY—NEW ISSUES RAISED BY CROSS BILL.
   While new issues may be raised by a cross bill, such issues must be confined to the subject-matter of the original bill and be germane thereto and other issues must be dismissed as involving subject-matter not a part of the original action.

2. SAME—DISCRETION OF COURT.
   The sound discretion of the court is the controlling guide of judicial action in every phase of a suit in equity.

3. Same—Discretion of Court—Relief—Jurisdiction.

The granting of equitable relief is ordinarily a matter of grace and whether a court of equity will exercise its jurisdiction, and the propriety of affording equitable relief, rests in the sound discretion of the court, to be exercised according to the circumstances of the particular case.

4. Same—Nature of Discretion of Court.

The discretion to be exercised by a court of equity in the matter of granting relief is not an arbitrary one, but must be exercised in accordance with the fixed principles and precedents of equity jurisprudence, and in accordance with the evidence.

5. Same—Adequacy of Remedy at Law—Transfer of Causes.

Where issues in main suit involved titles to land and mining operations thereon, decree is vacated insofar as it grants relief to a defendant and cross-plaintiff on his cross bill with respect to specific enforcement of a sales contract and damages for its breach, the remedy at law therefor being adequate, without prejudice to such cross-plaintiff in pursuing such remedy.

6. Same—Transfer of Causes—Retention of Jurisdiction—Impounded Funds.

Where there has been a partial settlement *pendente lite* between some of the parties to a chancery suit, insolvency of some parties is claimed to exist, one of the parties is a nonresident, a substantial sum is impounded and it was necessary to vacate portion of decree granting relief to a defendant on his cross bill because of adequacy of remedy at law, trial court is directed under court rule, because of peculiar circumstances involved, to retain jurisdiction of cause and impounded funds, and transfer cause to law side of court for final determination (Court Rule No. 72 [1945]).

7. Costs—Partial Settlement Pendente Lite—Transfer of Cause.

Where there has been a partial settlement *pendente lite* of a chancery suit and it is necessary to vacate portion of decree as to relief on cross bill because of adequacy of remedy at law, costs of chancery appeal are ordered to be ascertained but taxation ordered to abide outcome of action on law side of court to which cause is transferred.

Appeal from Ingham; Hayden (Charles H.), J. Submitted January 15, 1947. (Docket No. 56, Calendar No. 43,513.) Decided April 17, 1947.

Bill by Bert Youngs against Charles West, R. C. West, Lavon D. Miller, Ralph E. Smallidge, Lewis & Frisinger, Harold Youngs, and others for specific performance of option agreement and injunction. Cross bill by defendant Smallidge against plaintiff and other defendants to set aside the cancellation of an agreement and for damages. Plaintiff's cause of action settled. Decree for defendant Smallidge. Defendants Miller and West appeal. Reversed and remanded for further proceedings.

*J. Don Lawrence (Pierce, Planck & Ramsey,* of counsel), for defendant Smallidge.

*Shields, Ballard, Jennings & Taber* and *Burke, Burke & Smith,* for defendant Miller.

*Walter O Estes,* for defendants West.

Bushnell, J. On January 15, 1945, plaintiff Bert Youngs instituted a chancery action in Ingham county, in the nature of discovery for the purpose of restraining defendants Wests and Miller from interfering with his possession, control and management of lands on which coal was being excavated by defendant Lewis & Frisinger and stored, sold and merchandised by defendant Ralph E. Smallidge. Youngs sought to prevent the transfer of title to the land and cancellation of deeds pertaining thereto. He also desired specific performance of certain agreements and a declaration of his rights as to others.

Youngs charged that prior to May 3, 1944, defendant Charles W. West had represented that he owned a parcel of land on which coal lying near the surface could be obtained by strip mining, and that he had an option to purchase adjacent parcels. Youngs,

who had been financially interested in strip-coal mining operations in the vicinity, claimed that he finally entered into an option agreement with the Wests for the purchase of two of the three parcels of land involved herein. Prior to the expiration of this option Youngs was informed by West that it was necessary to pay certain sums of money in order to protect West's option on these parcels, and Youngs advanced $500 for this purpose, which payment was to be credited upon Youngs' obligation to West. Later, Youngs was informed that title to the two 40-acre parcels could be obtained upon the payment of $1,800 each, and it was agreed that a land contract would be drawn protecting Youngs' advancement of funds. Youngs had tests and experiments made as to the location and amount of coal on the lands and arranged for machinery and labor for strip operations thereon. Later, according to Youngs, it was agreed that the parcel of 18 acres, entirely controlled by West, should be included in the project and its cost added to the cost of coal mined as a result of the operations supervised by Youngs. He contended that each of the parties was to have an equal interest in the properties, with an equal division of net profits between defendants Ethel West, R. C. West, Harold Youngs, and himself.

In accordance with this agreement plaintiff claimed that he made a further payment of $100 to the Hetz Construction Company to apply on the purchase of this land by West, which money was to be credited by Charles W. West on Youngs' part of the purchase price of the other two parcels. Later, other sums were paid by Youngs for the same purpose; and on June 30, 1944, Hetz and wife conveyed one of the parcels of land to Charles W. and R. C. West. This deed was not recorded but was

delivered to Youngs to be kept by him as security for the money he had advanced.

Youngs then acquired a mining scale from his son, Darwin, but before the scale could be installed, Corr Brothers Construction Company (not a party to this action) acquired and obtained from Bert Youngs a guarantee of payment for their services in transferring the scales from Petersburg, Indiana to Williamston, Michigan, and installing the same. Youngs arranged with defendant Lewis & Frisinger, of Ohio, to excavate coal on the three parcels, and a contract for this work was executed by defendants Wests. The Lewis & Frisinger Company moved its equipment onto the land and commenced excavating, which work continued until approximately the time of filing the bill of complaint. Lewis & Frisinger gave a performance bond therefor in the penal sum of $10,000.

Youngs thereafter made an arrangement with defendant Ralph E. Smallidge to store, sell, merchandise and distribute the coal that was mined. An agreement to this effect was executed between defendants Wests and Smallidge. This agreement provided that Smallidge was to be furnished with a minimum of 1,000 tons of coal per week, of salable quality, which he was to have the exclusive right to sell and for which he agreed to pay defendants Wests $4.95 per ton until the supply of coal was exhausted. Coal stored on the premises was to be paid for in part by Smallidge at the rate of $2 per ton, and when removed, Smallidge was to pay the remainder of the contract price. It was contemplated that all of the parties to the Smallidge agreement were to join in borrowing money to finance the coal mining operations.

Youngs charged in his bill of complaint that sometime prior to January 3, 1945, defendants Wests

and defendant Lavon D. Miller entered into a conspiracy for the purpose of effecting a conveyance and transfer of title to the lands, whereby Youngs would be wholly deprived of any interest therein; and that in furtherance of this conspiracy conveyance was made of two of the parcels to Miller, and plaintiff was subsequently directed to "remain away from said coal mine and coal mining operations." Youngs also charged that defendants Wests and Miller attempted to interfere with the performance of the Lewis & Frisinger Company and the Smallidge contracts whereby he, Youngs, would be deprived of his share of the profits from the mining operations.

Smallidge filed a lengthy answer and cross bill in which he sought specific performance of his agreement with defendants Wests and damages for the claimed illegal cancellation thereof. Defendants Wests, by answer and cross bill, sought injunctive relief against Youngs. Miller, who had rendered financial assistance to the Wests, joined in the attack against Youngs without seeking affirmative relief.

Various motions and counter-motions were filed and considerable testimony was taken. The trial court impounded such moneys as were available, placing them in a trust fund pending the ultimate disposition of the matter.

Shortly after the commencement of the trial it was represented to the court that the defendants, Wests, Harold Youngs, and Lavon D. Miller, had completely settled all matters in controversy with plaintiff Bert Youngs. The record shows that Miller paid the sum of $24,581.74 into court, consisting of the joint check of Youngs and West in the sum of $1,298.06, money on deposit in the name of Youngs amounting to $1,663.48, and $21,620.20 in cash. In consideration of this sum, releases were

executed and filed by plaintiff Bert Youngs and defendant Harold Youngs, acknowledging full payment, satisfaction and accord of all claims, jointly and severally, against defendants Wests and Miller, and it was agreed that the bill of complaint filed by Youngs should be dismissed as to all defendants except Smallidge. As a further consideration, Bert and Harold Youngs assigned all of their right, title and interest to impounded funds in the sum of $4,086.01.

Two written opinions were filed by the trial judge, the first on December 28, 1945, and the second, April 18, 1946. In the decree entered on April 20, 1946, Smallidge was granted relief against defendants Wests and Miller and awarded specific performance of his contract and supplemental agreement. However, because of "practical difficulties presented in the enforcement of specific performance," Smallidge was awarded damages in lieu thereof in the sum of $31,800 against the Wests and Miller, jointly and severally. They were enjoined and restrained from "mortgaging, encumbering or otherwise disposing of, removing, mining or selling the premises," or any coal thereon already mined, with the right to foreclose this lien in chancery at any time after 30 days if the judgment and costs were not fully paid. Impounded funds amounting to $4,086.66 were released to Smallidge to be applied upon his judgment. The cross bill as to Lewis & Frisinger was dismissed and costs were taxed against the Wests and Miller.

On appeal defendants Wests adopted the statement of facts and arguments of law made by Miller. Numerous questions are raised on appeal, the controlling one, however, being whether the Smallidge cross bill is germane to the action brought by plaintiff Bert Youngs against defendants Wests and

Miller. In considering this matter, it must be borne in mind that Smallidge was originally joined as a defendant for the purpose of restraining him from disposing of funds in his hands and selling coal stored on the premises, which he had the right to sell under his agreement with the Wests. Smallidge's cross bill was for the purpose of restraining defendants Wests and Miller from interfering with his operations and to protect his potential earnings from the sale of coal that was mined by Youngs and the Wests.

Youngs' action was based upon his claim of title in the lands and his agreement in the profits of the mining operations and arose out of a claimed conspiracy on the part of the Wests and Miller to deprive him of this interest.

It is difficult to see how the Smallidge sales agreement is in any way germane to the dispute between Youngs and the Wests and Miller. New issues may be raised by a cross bill but such issues must be confined to the subject-matter of the original bill and germane thereto. Any other issues must, under the authority of *Hannan* v. *Freund,* 235 Mich. 126, be dismissed as involving subject-matter not a part of the original action.

"Broadly speaking the sound discretion of the court is the controlling guide of judicial action in every phase of a suit in equity. So the granting of equitable relief is ordinarily a matter of grace, and whether a court of equity will exercise its jurisdiction, and the propriety of affording equitable relief, rests in the sound discretion of the court, to be exercised according to the circumstances and exigencies of each particular case. Of course, this discretion is not an arbitrary one, but must be exercised in accordance with the fixed principles and precedents of equity jurisprudence, and in accordance with the evidence." 30 C. J. S. pp. 328, 329.

In the early case of *Andrews* v. *Kibbee*, 12 Mich. 94 (83 Am. Dec. 766), it was held that a cross bill to redeem a prior mortgage and to foreclose another did not present a case which could possibly be connected with a judgment creditor's bill. Although the controversies had an apparent relation arising out of peculiar circumstances they had no legal dependence upon each other, and the Court found that the issues pertained to matters that were entirely foreign to one another. The cross-plaintiff was therefore required to pursue his remedy in a suit at law. See, also, in this connection *Hackley* v. *Mack*, 60 Mich. 591, and *Landskroener* v. *Henning*, 221 Mich. 558.

In the instant case the main action involved titles to land and mining operations thereon. The Smallidge cross bill sought relief with respect to the enforcement of a sales contract and damages for its breach.

The situation as it was developed in the instant case is controlled by the law that was applied in *Peczeniuk* v. *Danielak*, 277 Mich. 151, where, in a suit to foreclose a mortgage, defendant, by cross bill, sought relief in the nature of *indebitatus* assumpsit against certain other defendants. In that situation this Court said:

"The issues between defendants were not of equity cognizance but solely at law, and the foreclosure suit could not be employed as a vehicle for making such issues anything else."

Defendants were therefore remitted to actions at law.

In *American State Bank of Detroit* v. *Van Dyke*, 278 Mich. 471, in a suit to enforce the statutory double liability of a bank stockholder against the record holder of the stock, the latter's cross bill to

establish liability of transferees for reimbursement was held not germane to the subject-matter of the original bill and answer thereto, and cross-plaintiff was remitted to an action at law.

This well-recognized rule is particularly applicable to the facts of the instant case and, in the light of the authorities cited, the decree of the lower court should be vacated as to Smallidge, without prejudice to his rights, if any, in a proper action at law.

Under the provisions of Court Rule No. 72 (1945) and because of the peculiar circumstances of the case, *viz.,* the partial settlement *pendente lite,* the claimed insolvency of the Wests, the nonresidence of Miller, and the amount of impounded funds, the trial court should retain jurisdiction of the subject-matter and of the parties. The claim of Smallidge must be adjudicated at law, and the trial court is directed to transfer that issue to the law side of the court for that purpose. The impounded funds are to be retained pending final determination of the controversy. The costs of the chancery appeal are to be ascertained, but taxation therefor shall abide the outcome of the law action. If Smallidge prevails in the law action, no costs in this chancery action are to be allowed the appellants in the instant case, but Smallidge is to be allowed his costs.

A decree may be entered here in conformity with this opinion and the cause is remanded for further proceedings.

CARR, C. J., and BUTZEL, SHARPE, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.