# STATE OF MICHIGAN

# COURT OF APPEALS

CLAYBANKS TOWNSHIP,

Plaintiff/Counter-Defendant-
Appellant,

v

PAUL FEORENE and TANA FEORENE,

Defendants/Counter-Plaintiffs-
Appellees.

UNPUBLISHED
December 8, 2015

No. 322043
Oceana Circuit Court
LC No. 13-010184-NZ

Before: TALBOT, C.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

Plaintiff, Claybanks Township, appeals as of right the trial court's May 19, 2014 amended order granting defendants' motion for summary disposition and for sanctions. We affirm.

Defendants, Paul and Tana Feorene, own 40 acres of land in Claybanks Township. Defendants built three structures on their land, a greenhouse in 2010 and 2011, a gazebo in 2012, and a hay barn in 2013, without obtaining zoning permits for the structures, in contravention of the Claybanks Township Zoning Ordinance (CTZO). Because the structures were not built in compliance with the CTZO, plaintiff sued defendants and requested that the trial court order defendants to remove the structures. The trial court granted summary disposition to defendants and ordered plaintiff to issue zoning permits at the standard fee for the three structures.

Plaintiff argues that the trial court erred in granting summary disposition to defendants. We review de novo a trial court's decision on a motion for summary disposition. *Moser v Detroit*, 284 Mich App 536, 538; 772 NW2d 823 (2009). Summary disposition is proper under MCR 2.116(C)(10) if "there is no genuine issue of material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." We consider the affidavits, pleadings, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party. *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009). We also review de novo a trial court's interpretation and application of the relevant statutes and ordinance provisions. *Kincaid v Cardwell*, 300 Mich App 513, 522; 834 NW2d 122 (2013); *Great Lakes Society v Georgetown Charter Twp*, 281 Mich App 396, 407; 761 NW2d 371 (2008).

According to plaintiff, the trial court erred when it concluded at the final hearing in this matter that the CTZO was invalid and could not be enforced because it had not been filed with the county clerk. A court speaks through its written orders and judgments, not through its oral pronouncements. *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009). The May 19, 2014 amended order indicates that defendants' motion for summary disposition was granted for the reasons stated on the record at the January 27, 2014 hearing. At this hearing, the trial court speculated whether the CTZO was valid, but it made no conclusion regarding the CTZO's validity. Accordingly, based on the trial court's written order, the trial court's conclusion at the hearing that the CTZO may have been invalid played no part in the trial court's decision to grant summary disposition to defendants. Therefore, we need not address the trial court's purported conclusion that the CTZO was invalid.

Also, according to plaintiff, the trial court failed to adhere to the CTZO and the Michigan Zoning Enabling Act (MZEA), MCL 125.3101 *et seq.*, when it granted summary disposition to defendants. Under § 203 of the CTZO, a zoning permit is required and "shall be obtained" before any structure is built. Section 207 of the CTZO declares that any structure built before a zoning permit is obtained is a nuisance per se. Similarly, the MZEA declares that any structure built in violation of a zoning ordinance is a nuisance per se and instructs that the court "shall order the nuisance abated." MCL 125.3407.

There can be no dispute that defendants violated the CTZO. Contrary to § 203 of the CTZO, defendants built the greenhouse, gazebo, and hay barn without obtaining zoning permits for the structures. Consequently, pursuant to § 207 of the CTZO and MCL 125.3407, the structures were a nuisance per se, and the trial court was required to abate the nuisance. See *Lima Twp v Bateson*, 302 Mich App 483, 493; 838 NW2d 898 (2013), citing MCL 125.3407 ("Generally, a violation of a zoning ordinance constitutes a nuisance per se, and a court must order it abated."); see also *Bay City v Bay Co Treasurer*, 292 Mich App 156, 171; 807 NW2d 892 (2011) (stating that the word "shall" in a statute indicates a mandatory, rather than a permissive, act). To "abate" is to eliminate or nullify. See *Black's Law Dictionary* (7th ed) (defining "abatement" as "[t]he act of eliminating or nullifying").

Here, defendants' violation of the CTZO could be eliminated or nullified in two ways: (1) the three structures could be razed, or (2) zoning permits could be issued for them. Proceedings to abate a nuisance are generally equitable in nature. *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 270; 761 NW2d 761 (2008), citing MCL 600.2940(5). A trial court has discretion regarding the grant of equitable relief. See *Youngs v West*, 317 Mich 538, 545; 27 NW2d 88 (1947) ("Broadly speaking the sound discretion of the court is the controlling guide of judicial action in every phase of a suit in equity. . . . [T]he propriety of affording equitable relief[] rests in the sound discretion of the court, to be exercised according to the circumstances and exigencies of each particular case.") (quotation omitted). "A court acting in equity looks at the whole situation and grants or withholds relief as good conscience dictates." *Mich Nat'l Bank & Trust Co v Morren*, 194 Mich App 407, 410; 487 NW2d 784 (1992). One who seeks the aid of equity must come with clean hands. *Rose v Nat'l Auction Group, Inc*, 466 Mich 453, 463; 646 NW2d 455 (2002). "The clean hands maxim is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *McFerren v B & B Investment Group*, 253 Mich App 517, 522; 655 NW2d 779 (2002) (quotations omitted).

Upon being informed by John Muchna, plaintiff's zoning administrator, that zoning permits were needed for the greenhouse and gazebo, defendants attempted to obtain them. There is no indication in the evidence that plaintiff would have denied the zoning permits. Rather, the evidence showed that plaintiff conditioned the granting of the zoning permits on defendants' payment of the $3,100 fine that it had imposed. For example, in the June 14, 2014 telephone call, when Paul Feorene asked Richard Smith, plaintiff's supervisor, to direct Muchna to issue the zoning permits, Smith refused and said that any fines would cover the costs of the permits. Similarly, in his June 15, 2013 letter, Smith informed defendants that they could purchase the zoning permits when they paid the $3,100 fine to Muchna. Additionally, Paul averred that at the July 8, 2013 meeting of plaintiff's board, the board said that no zoning permits would be issued to him until defendants paid the fine. During the summer of 2013, defendants built the hay barn, and they made no attempt to obtain a zoning permit. According to Paul, the attempt would have been futile, given defendants' dealings with plaintiff. Plaintiff has never suggested that it would have granted a zoning permit for the hay barn had defendants requested one. Paul's belief appears to have been accurate. According to Paul, in September 2013, after Smith and Muchna issued a stop work order regarding the hay barn, Muchna denied his offer to purchase a zoning permit at the regular price.

The evidence, particularly Smith's June 15, 2013 letter, established that plaintiff imposed the $3,100 fine pursuant to § 208 of the CTZO. The section provides, in pertinent part:

> Any person who . . . violates, neglects, or refuses to comply with any provisions of this Ordinance . . . shall be fined upon conviction not more than [$100], together with the actual costs of prosecution, or shall be punished by imprisonment for not more than [90] days in the county jail, or both. Each and every day during which a violation continues shall be deemed as separate offenses.

An ordinance is subject to the rules of statutory interpretation. *Goldstone v Bloomfield Twp Pub Library*, 479 Mich 554, 568 n 15; 737 NW2d 476 (2007). Thus, undefined words in an ordinance must be given their plain and ordinary meaning. *Chico-Polo v Dep't of Corrections*, 299 Mich App 193, 198; 829 NW2d 314 (2013). The relevant sentence in § 208 of the CTZO contains the words "conviction" and "prosecution." The word "conviction" is defined, in pertinent part, as "[t]he act or process of judicially finding someone guilty of a crime; the state of having been proved guilty" and "[t]he judgment (as by a jury verdict) that a person is guilty of a crime." *Black's Law Dictionary* (7th ed). The word "prosecution" is defined, in pertinent part, as "[a] criminal proceeding in which an accused person is tried." *Id.* The use of the words "conviction" and "prosecution" establishes that the $100 fine is the fine that is imposed after there has been a judicial determination, made in district court, see MCL 41.183(6), that the person has violated the CTZO. Plaintiff did not bring an action in district court against defendants for an ordinance violation and, consequently, there has been no judicial determination in the district court that defendants violated the CTZO. Accordingly, plaintiff could not fine defendants under § 208 for each day of their violation of the ordinance.

The trial court ordered plaintiff to issue zoning permits for the greenhouse, gazebo, and hay barn for the standard fee. By doing so, the trial court abated the nuisance per se, complying with MCL 125.3407. Once the zoning permits were issued, defendants' violation of the CTZO

-3-

would be nullified or eliminated. The trial court did not abuse its discretion in determining that the best away to abate defendants' violation of the CTZO was to order plaintiff to issue the zoning permits. *Youngs*, 317 Mich at 545. The evidence showed that defendants were willing to purchase the zoning permits and that plaintiff was willing to issue the permits so long as defendants paid the $3,100 fine. Only after defendants refused to pay the $3,100 fine, did plaintiff file its complaint and seek the destruction of defendants' three structures. Under these circumstances, where plaintiff conditioned the grant of the requested zoning permits on the payment of the $3,100 fine, which it did not have the authority to impose, and then only sought destruction of defendants' structures after defendants refused to pay the fine, plaintiff's position was tainted with inequitableness and bad faith. *McFerren*, 253 Mich App at 522. We affirm the trial court's order granting summary disposition to defendants.[1]

Defendants claim that the Right to Farm Act (RTFA), MCL 286.471 *et seq.*, provides an alternative basis to affirm the trial court's grant of summary disposition.[2] The RTFA was enacted to protect farmers from nuisance lawsuits. *Scholma v Ottawa Co Rd Comm*, 303 Mich App 12, 22; 840 NW2d 186 (2013). "[A] farm or farm operation shall not be found to be a public or private nuisance if the farm or farm operation alleged to be a nuisance conforms to generally accepted agricultural and management practices [GAAMPs] . . . ." MCL 286.473(1). The RTFA is an affirmative defense, and to successfully assert it as a defense, a party must prove two conditions: (1) the challenged activity constitutes a "farm" or a "farm operation" and (2) the farm or farm operation conforms to the relevant GAAMPs. *Lima Twp*, 302 Mich App at 496.

Regarding the second condition, defendants recognize it, but they do not identify any relevant GAAMPs. In fact, they state that "the RTFA and GAAMPs are silent with respect to zoning permits [and] regulations regarding setback, area, and height requirements." Because defendants do not identify any relevant GAAMPs and argue that the greenhouse, gazebo, and hay barn conform to them, we reject defendants' argument that the RTFA provides an alternative basis to affirm the trial court's grant of summary disposition.

Plaintiff also argues that the trial court erred in awarding attorney fees to defendants. Findings of fact underlying an award of attorney fees are reviewed for clear error, while underlying questions of law are reviewed de novo. *Loutts v Loutts*, 298 Mich App 21, 24; 826 NW2d 152 (2012). A finding is clearly erroneous when, although there is evidence to support it,

---

[1] In affirming the grant of summary disposition, we decline to address defendants' argument that plaintiff, by fining them $3,100 without a hearing, violated their right to procedural due process. By doing nothing more than citing case law for the general requirements of procedural due process, and without making any attempt to apply case law to the particular facts of the case, defendants have abandoned the issue. See *Spires v Bergman*, 276 Mich App 432, 444; 741 NW2d 523 (2007).

[2] Defendants were not required to file a cross-appeal to assert any argument regarding the RTFA. See *In re Herbach Estate*, 230 Mich App 276, 284; 583 NW2d 541 (1998) (explaining that an appellee is not required to file a cross-appeal to urge an alternative ground for affirmance, even if the alternative ground was considered and rejected by the trial court).

this Court is left with a definite and firm conviction that a mistake was made. *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 296; 769 NW2d 234 (2009). A trial court's ultimate decision to award attorney fees and its determination of the reasonableness of the fees are reviewed for an abuse of discretion. *In re Clarence W Temple & Florence A Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008).

Michigan follows the "American rule" regarding the payment of attorney fees and costs. *Haliw v Sterling Heights*, 471 Mich 700, 706-707; 691 NW2d 753 (2005). "Under the American rule, attorney fees generally are not recoverable from the losing party as costs in the absence of an exception set forth in a statute or court rule expressly authorizing such an award." *Id*.[3] Pursuant to MCL 600.2591(1), upon motion by a party, if a trial court finds that a civil action or defense to a civil action was frivolous, the court shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action. "The amount of costs and fees awarded under this section shall include all reasonable costs actually incurred by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees." MCL 600.2591(2). The statute defines the term "frivolous":

> "Frivolous" means that at least 1 of the following conditions is met:
>
> (*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.
>
> (*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.
>
> (*iii*) The party's legal position was devoid of arguable legal merit. [MCL 600.2591(3)(a).]

In awarding attorney fees to defendants, the trial court never discussed the term "frivolous," or how the term is defined in MCL 600.2591(3)(a). But based on the trial court's statement that the case was "inappropriately brought to begin with," the trial court may have believed that plaintiff's legal position—that it was entitled to an order requiring defendants to raze the three structures because the structures were built without zoning permits—was devoid of arguable legal merit. The evidence showed that defendants violated the CTZO; contrary to § 203 of the CTZO, defendants did not obtain zoning permits before building the greenhouse, gazebo, and hay barn. Pursuant to § 207 of the CTZO and MCL 125.3407, those structures were a nuisance per se, and the statute required the trial court to order the nuisance abated. Based on § 207 of the CTZO and MCL 125.3407, a finding that plaintiff's legal position was devoid of arguable legal merit was clearly erroneous. *Marilyn Froling Revocable Living Trust*, 283 Mich App at 296.

---

[3] The RTFA authorizes an award of attorney fees. See MCL 286.473b. Because defendants have failed to establish that the RTFA provides them with an affirmative defense, we will not use the RTFA as a basis to affirm the award of attorney fees. Indeed, defendants only argue that they are entitled to attorney fees under the RTFA if the RTFA was a defense to plaintiff's complaint.

However, the record clearly indicates that plaintiff brought this action with the primary purpose to harass and injure defendants, which authorized the trial court's award under MCL 600.2591(3)(a)(*i*). At one of the hearings, the trial court noted that "most ordinances have a requirement that if you don't get them timely, well then it cost[s] twice as much. You know the fee then is doubled. That is what I've normally noticed. They don't assess $3100 fines and take it upon themselves to enforce their ordinance." The trial court questioned the "egregious" manner in which plaintiff chose to police the ordinance. Then, at the hearing on plaintiff's motion for reconsideration, the trial court noted that plaintiff, by seeking to raze defendant's three structures, just wanted to punish defendants:

> Well, [plaintiff] apparently just wants to punish, it doesn't want to enforce this ordinance. Like I said, I've been on this bench for 36 years and I've never had a situation where this Court has ever torn down any building unless it was on somebody else's property and it certainly never torn [sic] it down for late filing of permits; matter of fact, most of the ordinances around here require a double payment. I think as I recall, the fee was $45.00 if you got it before and if you didn't get it and you were in the process of construction or constructed, then it doubled to $90.00.

The trial court added that it believed defendants "did everything possible to avoid the lawsuit and it was inappropriately brought to begin with." It concluded:

> You go out and you look at the property. You look at this pole building and this gazebo. If you find anything structurally inappropriate, you write them up. The Court would require them to repair it, bring it to the ordinance and whatever fees were incurred on the part of the Township over the thing, the Court would allow the Township. That's how you enforce that ordinance; you don't penalize your own people by requiring them to tear down [] $50,000 worth of property. I'm guessing that's what it cost because I have farms myself. I just don't understand the relationship between the sin and the penalty. It seems to be absolutely obnoxious to my sense of fairness or justice, to be very frank with you.

Defendants' attorney moved for attorney fees on the basis of "bad faith," and the trial court adopted the defendants' statement, noting "[t]he unfairness that the township has put this man through." The evidentiary record supports a conclusion that plaintiff brought the action for the purpose of harassing and injuring defendants after they failed to pay the illegally imposed $3,100 penalty. Accordingly, the trial court did not abuse its discretion when it ordered plaintiff to pay defendants' attorney fees.

Affirmed.

/s/ Michael J. Talbot
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto

-6-