*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANGELO T. ARMSTRONG, CYNTHIA C. SNOW-ARMSTRONG, ROBERT D. LANE, JR., and JANET E. LANE,

UNPUBLISHED
November 9, 2021

Plaintiffs/Counterdefendants-Appellees/Cross-Appellants,

and

JOSEPH S. SAWYER,

Plaintiff/Counterdefendant-Appellee,

v

No. 351258
Gladwin Circuit Court
LC No. 16-008700-CH

NICK GARY and LISA GARY,

Defendants/Counterplaintiffs/Cross-Plaintiffs/Third-Party Plaintiffs-Appellants/Cross-Appellees,

and

GLADWIN COUNTY TREASURER,

Defendant/Cross-Defendant/Third-Party Plaintiff-Cross-Appellee,

and

TOWNSHIP OF TOBACCO, TOBACCO TOWNSHIP ASSESSOR, and TOBACCO TOWNSHIP SUPERVISOR,

Third-Party Defendants.

Before: RONAYNE KRAUSE, P.J., and CAMERON and RICK, JJ.

PER CURIAM.

In this real property dispute, defendants Nick Gary and Lisa Gary[1] appeal by right the trial court's order, following a bench trial, holding that plaintiffs, Angelo T. Armstrong, Cynthia C. Snow-Armstrong, Robert D. Lane, Jr., Janet E. Lane, and Joseph S. Sawyer, have a right-of-way easement over property owned by defendants. The trial court awarded plaintiffs $1 in nominal damages for defendants' trespass to the easement; and it ordered defendants to remove a deck, dock, seawall, and any other improvements made to the property. On cross-appeal, plaintiffs appeal an earlier order of the trial court holding that defendants are the fee simple title owners of the property encumbered by the right-of-way easement. We affirm the trial court's holding that defendants are the fee simple title holders, and we reverse the trial court's holding that plaintiffs enjoy easement rights over the property.

## I. BACKGROUND

The property at issue is a strip of land running from a public street, Quillette Street, to the Tobacco River. In 1947, the Rio Vista Subdivision was platted, consisting of a number of similar lots running from Quillette Street to the river. The plat designated three lots as public streets: Dennis Street, Harley Street, and Paige Street. The property at issue is the land designated as Paige Street, which lies between Lots 19 and 20. Paige Street was never developed and remains largely wooded. In December 2005, Tobacco Township adopted a resolution placing Paige Street and the other two undeveloped streets on its tax roll. In so doing, it split the Paige Street parcel in half, joining the western half of Paige Street with Lot 19 and the eastern half of Paige Street with Lot 20. However, although each half of Paige Street was given the same owner address as the lot to which it was assigned (i.e., Lot 19 or Lot 20), the halves were given their own individual parcel identification numbers (referred to as Parcel 1 and Parcel 2) and were placed on the 2006 tax roll independently with the owners listed as "unknown." Nevertheless, the assessments and tax bills were mailed to, respectively, Lot 19 and Lot 20.

At the time, Lot 19 was owned by Harold and Pamela Brenizer, and Lot 20 was owned by Dennis Doede. No objections were made to the tax assessment of the Paige Street parcels, nor did the Tobacco Township Supervisor receive any other communication from the Brenizers or Doede regarding the parcels. The property taxes levied on the two parcels were not paid and the taxes were turned over as delinquent to the Gladwin County Treasurer on March 1, 2007. The taxes remained unpaid, and a certificate of forfeiture was sent to each owner address for Lot 19 and Lot 20 on file; the certificates were recorded against the two parcels with the Gladwin County Register of Deeds on April 11, 2008. Each certificate stated, "This property will be titled absolutely in the name of the foreclosing governmental unit (FGU) if not redeemed by March 31, 2008 immediately succeeding the entry of a Judgment of Foreclosure pursuant to MCL 211.78(k). After this date the parties of interest in this property WILL HAVE NO FURTHER RIGHT TO REDEEM."

---

[1] For ease of comprehension, we will refer to the Garys as "defendants," and we will refer to defendant the Gladwin County Treasurer as "the treasurer."

The property taxes on Parcels 1 and 2 remained unpaid. On June 3, 2008, the Gladwin County Treasurer filed a petition seeking to foreclose all tax-delinquent property that were forfeited for unpaid 2006 real property taxes, including Parcels 1 and 2. On September 8, 2008, a representative of the treasurer, Patricia Engel, made a personal visit to the property and posted notice of the show cause hearing and judicial foreclosure hearing in a conspicuous location on each parcel. A notice of show cause hearing and judicial foreclosure hearing was also sent by certified mail to the owner addresses for Parcels 1 and 2. On February 23, 2009, the Gladwin Circuit Court held a hearing on the petition for foreclosure. No one appeared at the hearing. The court found that "petitioner filed with the clerk of the court proof of the notice, service, or publication required under the General Property Tax Act (GPTA), PA 206 of 1893, as amended, MCL 211.1 et seq." and that "those parties entitled to notice and an opportunity to be heard have been provided that notice and opportunity."

The court entered a judgment of foreclosure. In relevant part, the judgment vested fee simple title to each parcel in the treasurer, and it extinguished "all existing recorded and unrecorded interests in each parcel" other than "a visible or recorded easement or right-of-way." The properties were not timely redeemed, resulting in the transfer to Gladwin County Treasurer of fee simple title to the properties without further rights of redemption. On May 4, 2009, the treasurer recorded a "Notice of Judgment of Foreclosure" together with a copy of the judgment of foreclosure for each parcel. On September 9, 2009, the county sold Parcels 1 and 2 (i.e., the Paige Street property) to Harry R. Gary and Brenda L. Gary Trust (the trust) via quitclaim deed. Plaintiffs Angelo T. Armstrong and Cynthia C. Snow-Armstrong purchased Lot 20 from Doede via warranty deed on April 28, 2014. Plaintiffs Robert D. Lane, Jr. and Janet E. Lane purchased Lot 19 from the Brenizers via warranty deed on January 27, 2015. Plaintiff Joseph S. Sawyer purchased Lot 24 (847 Quillette Drive) via warranty deed on July 21, 2014. On May 27, 2015, the trust transferred Parcels 1 and 2 to defendants via quitclaim deed. At the time of purchases, and at the time of trial, the plat of Rio Vista Subdivision remained unaltered as to Paige Street.

According to Brenda Gary (Brenda), after purchasing the property she was not aware of anyone using the property and she never saw anyone other than her family use the property. The detached garage on Doede's lot had a fence that ran from the garage to the center of the property and down to the water. She only saw Doede on the property when he would come onto it to talk and visit. Before the filing of the present lawsuit, nobody said that she did not own the property. She said that she had the property surveyed, but someone kept pulling out the survey marker from the southwest corner of the property. Defendant Nick Gary (Nick) said that he was first on the property in 2008 just before his parents bought the property. He also observed the fence on the property at that time. Doede had junk, metal, and tire rims on the property, but he cleaned out most of the junk after Nick's parents bought the property. In 2009 or 2010 he and his father and his brother cleared a space at the road end of the property and put in tiles and a small driveway.

Plaintiffs alleged in their complaint that "the Gladwin County Road Commission never assumed jurisdiction or authority over Paige Street." Plaintiffs testified that nobody used Paige Street to access the water. Each of the plaintiffs' lots had access to the water and to Quillette Street. Each plaintiff testified that they did not intend to give up any rights to Paige Street or do any visual acts to indicate to anyone that they were giving up rights to Paige Street. Plaintiff Sawyer said that he had "potential ideas for Paige Street" such as access to the water via

-3-

snowmobile or quad and that the seawall interfered with such use. He said that the property as it currently existed could not be developed for the purposes he envisioned.

Nick Gary testified that the Lanes' jet ski trailer was on the property and he twice asked them to remove it, and when they did not comply he moved it himself. He said that the Lanes had a wire for a dog fence that extended onto the property and wrapped around the bottom of a tree. Lisa Gary said that there were two trailers at the road end of the property. There was a jet ski lift on the property, and there were steps coming from the water to the property for use by the Lanes' dog. Nick said that he asked the Armstrongs to remove their wood pile from the property, but they did not remove it. Nick removed an eight-inch black tile that was buried a foot deep that ran from the Armstrong house on to the property. Nick had a contractor cut down a tree near the property line so that it would not fall on the Armstrongs' garage. He replaced a clothes line on the Armstrongs' property that was damaged by the contractor. According to Nick, the Armstrongs' seawall extended 12 feet onto the property.

Nick Gary testified that in late June or early July 2015 a contractor cleared a path to the water and removed about 20 trees, ranging in diameter from six inches to two feet, and a lot of small shrubs, so that a crane could be brought in. He said that he obtained permits from the DEQ, the county, the township, and the DNR to build a seawall. He said that notice of the seawall was given to the Armstrongs and to the Lanes and provided them 30 days to object to construction of the seawall. No objections were made. The seawall was put in sometime around August 2015. The contractor then constructed a dock that hooked into the seawall. The dock was completed in August 2016. A deck the width of the lot was also constructed in 2016. Defendants obtained permits for all of the improvements.

According to Nick Gary, after the seawall was constructed, Cindy Snow-Armstrong complained to him that the seawall was on the Armstrongs' property. After that discussion, Nick called someone from the township, who came out and measured the seawall. The seawall was 66 feet wide, which is the exact width of defendants' property. According to Nick, the Armstrongs "called the township on them a lot." He said that the Armstrongs made it clear that they had objections to the seawall, the dock, and the deck. Only one complaint to the township resulted in defendants having to take corrective action: to build up the grade of the land and put in a retaining wall substation so water would drain to the river and not toward the Armstrongs' garage. Nick said that the complaints involved zoning issues, not ownership or easement issues. Janet Lane similarly testified that plaintiffs "questioned zoning." Janet said that when defendants began removing trees from the property, plaintiffs contacted the township to see if defendants "were doing things improperly and did not have zoning."

Lisa Gary testified that the Armstrongs began making complaints to the township after all of the improvements to the property were finished. She said that no one ever complained to her that defendants did not own the property or that there was an easement on the property. Lisa said that plaintiffs' complaints were "fix problems complaints" related to such things as flooding or the sunshades on the deck blocking the view of the river. Lisa said that defendants had $80,000 invested in the property, including the $30,000 purchase price of the property. A list of receipts and expenses related to the improvements was admitted. On October 4, 2016, after defendants had completed all of the improvements on the property, plaintiffs filed this action against defendants and the Gladwin County Treasurer.

-4-

In relevant part, the trial court rejected defendants' argument that the trial court lacked subject-matter jurisdiction to determine plaintiffs' quiet title action. The trial court then rejected plaintiffs' argument that the foreclosure process had been improper. The trial court noted that the owners of Lots 19 and 20 at the time had received proper notice of the assessment, tax bills, and foreclosure-related notices. Those prior owners never challenged any of the above. Furthermore, plaintiffs were on constructive notice of the foreclosure when they purchased Lots 19 and 20. The trial court also noted that plaintiffs had not claimed an interest in the Paige Street parcel until after the Garys had invested a significant sum of money into improving the property. It therefore concluded that it would be inequitable and improper to set aside the foreclosure or to vest fee title in plaintiffs. The trial court subsequently held that there was a genuine question of material fact whether plaintiffs had easement rights to the Paige Street parcel by virtue of the Rio Vista Subdivision plat, and likewise there was a genuine question of material fact whether plaintiffs had abandoned that easement.

The court held a bench trial, stating at the commencement that the parties agreed that if plaintiffs were able to meet their burden of establishing the existence of an easement, the remaining issue for trial was whether the easement had been abandoned. During the course of that trial, on cross-examination, Gary expressed the belief that an easement across Paige Street had existed since 1947. The trial court relied on that concession, in part, in concluding that the subdivision plat had indeed granted plaintiffs a right-of-way easement over the Paige Street parcel. The trial court implicitly opined that plaintiffs' conduct on the Paige Street parcel constituted a trespass and exceeded the scope of the easement, but declined to infer that plaintiffs intended to abandon the easement. The trial court concluded that the appropriate remedy was therefore to order defendants to remove the improvements they made to the parcel, notwithstanding the expense. This appeal followed.

## II. STANDARDS AND PRINCIPLES OF REVIEW

Subject-matter jurisdiction is a question of law that this Court reviews de novo. *Hillsdale Co Senior Servs, Inc v Hillsdale Co*, 494 Mich 46, 51; 832 NW2d 728 (2013). A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Id*. at 120. The interpretation and application of statutes, rules, and legal doctrines is reviewed de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). "We review the trial court's findings of fact in a bench trial for clear error and conduct a review de novo of the court's conclusions of law." *Chapdelaine v Sochocki*, 247 Mich App 167, 169; 635 NW2d 339 (2001).

Actions to quiet title are equitable. *Beach v Twp of Lima*, 489 Mich 99, 106; 802 NW2d 1 (2011). "When reviewing a grant of equitable relief, an appellate court will set aside a trial court's factual findings only if they are clearly erroneous, but whether equitable relief is proper under those facts is a question of law that an appellate court reviews de novo." *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008). However, this Court reviews for an abuse of discretion the injunctive relief itself. *Pontiac Fire Fighters Union Local 376 v City of Pontiac*,

482 Mich 1, 8; 753 NW2d 595 (2008). Generally, a trial court abuses its discretion by choosing an outcome outside the range of reasonable and principled outcomes. *Id*. However, a trial court's discretion in equity is further constrained: an equitable remedy must be tailored "to the circumstances and exigencies of each particular case" and "in accordance with the fixed principles and precedents of equity jurisprudence." *Youngs v West*, 317 Mich 538, 545; 27 NW2d 88 (1947) (quotation omitted). "A strict legal right, if incompatible with the equities of the case, does not necessarily entitle one to equitable redress," and the trial court should carefully weigh the relative harms to the plaintiff and to the defendant before crafting equitable relief. *Roy v Chevrolet Motor Car Co*, 262 Mich 663, 668-669; 247 NW2d 774 (1933).

In general, parties must preserve issues for appellate review by raising them in the trial court. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994). Although failure to timely raise an issue in a civil case waives review of that issue on appeal, *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008), this Court nevertheless retains discretion to "overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006) (citation omitted). Furthermore, appellate consideration is not precluded merely because a party makes a more sophisticated or more fully-developed argument on appeal than was made in the trial court. See *Steward v Panek*, 251 Mich App 546, 554; 652 NW2d 232 (2002). "The court is obligated only to review issues that are properly raised and preserved; the court is *empowered*, however, to go beyond the issues raised and address any issue that, in the court's opinion, justice requires be considered and resolved." *Paschke v Retool Industries (On Reh)*, 198 Mich App 702, 705; 499 NW2d 453 (1993) (emphasis in original), rev'd on other grounds 445 Mich 502; 519 NW2d 441 (1994).

"A party cannot stipulate a matter and then argue on appeal that the resultant action was error." *Chapdelaine v Sochocki*, 247 Mich App 167, 177; 635 NW2d 339 (2001). "[E]rror requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence." *Farm Credit Services of Michigan's Heartland, PCA v Weldon*, 232 Mich App 662, 683-684; 591 NW2d 438 (1998). However, our Supreme Court has noted that "a statement made by a party or his counsel, in the course of trial, is considered a binding judicial admission if it is a distinct, formal, solemn admission made for the express purpose of, *inter alia*, dispensing with the formal proof of some fact at trial." *Ortega v Lenderink*, 382 Mich 218, 222-223; 169 NW2d 470 (1969). Therefore, a party "is entitled to the benefit of testimony in support of a verdict in [their] favor despite [their] expression of an opinion inconsistent therewith." *Id*. at 223. The Courts are not bound by parties' statements or stipulations of law. *Kimmelman v Heather Downs Mgmt Ltd*, 278 Mich App 569, 576; 753 NW2d 265 (2008).

### III. SUBJECT MATTER JURISDICTION

Defendants argue that the trial court lacked subject-matter jurisdiction to amend the judgment of foreclosure. We disagree. Our Supreme Court has recognized that, under MCL 211.78k(6), which is part of the General Property Tax Act (GPTA), MCL 211.1 *et seq*., a judgment of foreclosure becomes absolute and final if the property owner fails to redeem the property or timely appeal the foreclosure. *In re Treasurer of Wayne Co for Foreclosure*, 478 Mich 1, 8; 732

NW2d 458 (2007). Although the statute itself does not use the word "jurisdiction," our Supreme Court characterized its plain language as "depriv[ing] the circuit court of jurisdiction to alter the judgment of foreclosure." *Id.* However, our Supreme Court also held that, notwithstanding the language of the statute, the Legislature cannot deprive the circuit court of jurisdiction to modify judgments of foreclosure based on constitutionally-inadequate notice. *Id.* at 10-11. A necessary corollary is that circuit courts have subject-matter jurisdiction to determine whether notice was constitutionally adequate. Furthermore, plaintiffs pursued equitable claims and sought equitable relief. It is well-settled that a circuit court has general equity jurisdiction. *Cherry Growers, Inc v Agricultural Mktg & Bargaining Bd*, 240 Mich App 153, 161; 610 NW2d 613 (2000). The trial court did not exceed its subject-matter jurisdiction in this matter.

## IV. FEE SIMPLE TITLE

Plaintiffs argue that the trial court erred in holding that defendants are the fee title holders of the property. In particular, plaintiffs generally argue that the foreclosure process was flawed, and the trial court should have set it aside. As a consequence, the treasurer would have had no valid title to convey to defendants. We disagree.

It is not disputed that the property was not redeemed following the foreclosure, and the foreclosure was not appealed. Consequently, as discussed, the circuit court lacked jurisdiction to alter or set aside the foreclosure, save one exception: where "the property owner [was] not provided with constitutionally adequate notice of the foreclosure." *In re Treasurer of Wayne Co for Foreclosure*, 478 Mich at 4. Plaintiff's various arguments to the general effect that the treasurer erred by dividing Paige Street into Parcels 1 and 2, or seeking to foreclose on the property at all, are therefore irrelevant except to the extent they bear on the notice provided to the owners at the time.

Plaintiffs argue that the owners of Lots 19 and 20 each owned half of Paige Street, which is consistent with the manner in which the treasurer divided Page Street. The then-owners of Lots 19 and 20 were sent a multitude of timely and proper notices. No person ever protested, challenged, appealed, or displayed the slightest interest in the proceedings, despite receiving ample notice and ample opportunity to do so. The current plaintiffs were not the property owners at the time, so they were not personally entitled to receive notice, and "[g]enerally, persons do not have standing to assert constitutional or statutory rights on behalf of another person." *In re HRC*, 286 Mich App 444, 458; 781 NW2d 105 (2009). Even if we were to accept plaintiffs' contention that the treasurer should not have sought to foreclose on Paige Street, the record unambiguously shows that the then-current owners of Lots 19 and 20 received constitutionally-adequate notice of the foreclosure proceedings and failed to avail themselves of the opportunities to avert that foreclosure. As discussed, the circuit court necessarily had jurisdiction to determine whether constitutionally-adequate noticed was given, but because it was, the circuit court was without jurisdiction to then set the foreclosure aside. *In re Treasurer of Wayne Co for Foreclosure*, 478 Mich at 8.

Plaintiffs argue that, where the foreclosing governmental unit makes a mistake, equity will nevertheless permit the foreclosure to be set aside. This is not entirely wrong, but the circumstances of this case do not warrant such an extraordinary remedy.

Our Supreme Court held that a foreclosure was properly set aside under circumstances involving a cascade of mistakes that culminated in the foreclosure of state-owned property that was absolutely exempt from taxation, where the foreclosing governmental entity knew that it had made a mistake and had agreed to remedy that mistake, where the trial court acknowledged that it should not have entered the foreclosure judgment, where the state actively and timely participated in challenging the foreclosure, and where the foreclosing governmental entity itself sought to set aside the foreclosure. See *In re Petition of Wayne Co Treasurer for Foreclosure*, 480 Mich 981, 981; 742 NW2d 981 (2007).[2] Here, even if we were to accept the proposition that taxing Paige Street, in whole or in halves, was improper, there is no indication that the treasurer was aware of any such mistake. Likewise, there is no indication that the then-owners of Lots 19 and 20 believed such taxation to be impermissible and declined to avail themselves of the opportunities to challenge the foreclosure on that basis. If any mistake occurred here, we are not persuaded that it was of such magnitude, especially in light of the property-owners' obvious disinterest, that equity should override the "legislative effort to provide finality to foreclosure judgments and to quickly return property to the tax rolls." *In re Treasurer of Wayne Co for Foreclosure*, 478 Mich at 4.[3]

We conclude that the trial court properly vested fee simple title to the Paige Street parcel in the Garys.

V. RIGHT-OF-WAY EASEMENT

Although foreclosure extinguishes most rights to property held by any entity or person other than the foreclosing governmental unit, there are exceptions. In relevant part, "a visible or recorded easement or right-of-way" will not be extinguished by foreclosure. MCL 211.78k(5)(e).

---

[2] See also, *In re Petition of Wayne Co Treasurer for Foreclosure*, unpublished per curiam opinion of the Court of Appeals, issued May 8, 2007 (Docket No. 265426), unpub op at pp 1-2. Peremptory orders from our Supreme Court are binding to the extent they can be comprehended, even if doing so requires reference to unpublished other opinions. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 115; 923 NW2d 607 (2018).

[3] Plaintiffs also rely on *Carola Condominium Ass'n v Chappell*, unpublished per curiam opinion of the Court of Appeals, Docket No. 325851, issued July 19, 2016. Unpublished opinions are not binding, and reliance thereon is disfavored. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 232 n 4; ___ NW2d ___ (2020). In any event, we agree with the trial court that *Carola* is distinguishable. *Carola* arguably stands for the proposition that a foreclosure may be equitably set aside on the basis of a sufficiently egregious mistake that nevertheless does not constitute a due process violation. However, in *Carola*, the taxing entity was specifically on notice of the mistake and had been explicitly told about the mistake twice, and the plaintiff set about trying to undo the foreclosure less than a year after the foreclosure occurred. Even if a mistake occurred here, which we do not find, it was not a mistake that the then-owners of Lots 19 and 20 explicitly communicated to the treasurer, and nobody took an interest in the foreclosure for many years thereafter. We also note that the trial court implicitly found plaintiffs less interested in owning the Paige Street property than in excluding defendants. *Carola* would not be applicable, even if it was binding.

The trial court found that the Rio Vista Subdivision plat conferred a right-of-way easement upon plaintiffs that was not vacated or abandoned.

We note as an initial matter that it is not entirely clear whether the trial court relied on Nick Gary's testimony to the effect that he believed an easement existed across the Paige Street property, but it would have been erroneous to do so. The extent of a party's rights under an easement is generally a question of fact. *Blackhawk Devel Corp v Village of Dexter*, 473 Mich 33, 40; 700 NW2d 364 (2005). However, the existence of an easement is a question of law, and the nature of an easement derived from an instrument is also a question of law. *Minerva Partners, Ltd v First Passage, LLC*, 274 Mich App 207, 218; 731 NW2d 472 (2007); see also *Little v Kin*, 468 Mich 699, 700; 664 NW2d 749 (2003). It is clear that Nick's testimony was not intended to be a formal stipulation, and in any event, as noted, parties may not stipulate to the law. Nick's testimony should not be considered binding. See *Ortega*, 382 Mich at 222-223. Nevertheless, the trial court drew its own independent conclusions, curing any possible error in this regard.

"The purchaser of property recorded in a plat receives both the interest described in the deed and the rights indicated in the plat." *Minerva Partners, Ltd*, 274 Mich App at 219. Here, the Rio Vista Subdivision plat, which was still in effect when plaintiffs purchased their lots, stated "that the streets and alleys as shown on said plat are hereby dedicated to the use of the public." In the absence of acceptance by the relevant public authorities, the public may never actually acquire any right to use a platted street. *Rindone v Corey Comm Church*, 335 Mich 311, 316-317; 55 NW2d 844 (1952). Furthermore, even if the public did have rights to a platted street, those rights may be abandoned by the relevant public authority. *Minerva Partners, Ltd*, 274 Mich App at 219. However, purchasers of other lots within the plat will nevertheless acquire private rights to make use of those streets, irrespective of acceptance or abandonment by the public. *Rindone*, 335 Mich at 317; *Minerva Partners, Ltd*, 274 Mich App at 219. The trial court properly found that the Rio Vista Subdivision plat conferred upon Rio Vista lot owners an easement to use the Paige Street parcel as a road; however, we note that such an easement right would *not* include any right to encroach upon the Paige Street parcel or to enter it from anywhere other than the water or Quillette Street. The right acquired is only the right to travel. See *Richey v Shephard*, 333 Mich 365, 371; 53 NW2d 487 (1952).

Defendants argue that plaintiffs nevertheless abandoned any rights to use the Paige Street parcel by their actions. "A highway may cease to be such by voluntary abandonment and non-use." *Gardens of Rest v Upper Mich Power & Light Co*, 322 Mich 153, 156; 33 NW2d 741 (1948); see also *Meyer v Meldrum*, 237 Mich 318, 322; 211 NW 658 (1927). In *Meyer*, the street in question had been rendered totally impassible by automobile, trees had been planted in the supposed roadway, a well had been dug approximately fifteen years previously, and it was questionable whether the supposed road had ever extended all the way to a lake. *Meyer*, 237 Mich at 320-321. Our Supreme Court found that the road had clearly been abandoned. *Id*. at 322. In contrast, the right-of-way in *Gardens of Rest* had undisputedly once been an extensively-used highway that became superseded by other roads, but portions of the road remained in some use, or at least remained usable. *Gardens of Rest*, 322 Mich at 156-157. Our Supreme Court declined to find that the road had been abandoned, although the issue was only whether a power company with an existing power line along the old roadway could install another power line. *Id*. at 155-156, 158.

The trial court erred as a matter of law to the extent it held that an easement in a platted right-of-way could not be abandoned by nonuse. The trial court relied on *Michigan Dep't of Natural Resources v Carmody-Lahti Real Estate, Inc*, 472 Mich 39; 699 NW2d 272 (2005), for the implicit proposition that plaintiffs must have manifested some specific intent to abandon the right-of way. However, that case involved more specific laws regarding abandonment of railroad right-of-ways. See *id*. at 384-385. Regarding platted streets, the instructive cases are *Meyer* and *Gardens of Rest*, which, when read together, instruct that nonuse is indeed, sufficient to abandon such a street without any manifested intent by other lot owners, so long as the nonuse is so thorough that the street becomes essentially unusable for travel. Put another way, although abandonment "consists of intention and nonuser," *Goodman v Brenner*, 219 Mich 55, 60; 188 NW 377 (1922), intention will effectively be satisfied if "the use for which the property is dedicated wholly fails." *Kirchen v Remenga*, 291 Mich 94, 113; 288 NW 344 (1939).

The facts, as set forth by the trial court, establish that by the time plaintiffs purchased their properties, Paige Street was unusable as a street, and it was not clear that it had ever been used (or usable) to access the water from Quillette Street. To the extent the Paige Street property was used by plaintiffs, they only did so by encroaching onto it as if part of their properties, not for purposes of traveling from Quillette Street to Tobacco River. Notably, the roadway in *Gardens of Rest* could have still been used as a road and still was being used as a road to some extent; whereas the roadway in *Meyer* was completely unusable, barely recognizable, and possibly never used at all. The situation here is more analogous to *Meyer*. By the time plaintiffs purchased their properties, the use of Paige Street as a street had already been abandoned through nonuser combined with a total failure of the use for which the property had been dedicated, and plaintiffs continued that nonuser. The trial court erred in finding that a right-of-way easement still existed for plaintiffs to enjoy.

## VI. EQUITABLE REMEDY

Because we conclude that the trial court erred in finding the easement not to have been abandoned, the trial court's remedy of requiring defendants' improvements removed was necessarily also erroneous. However, we note that even if the easement had not been abandoned, we would still find error in the trial court's remedy.

The trial court found, and we agree, that neither party was entirely without blame. The evidence shows that plaintiffs never actually used the Paige Street easement for its intended purpose, and neither did any of their predecessors, supporting the trial court's finding that plaintiff simply did not want to have defendants as neighbors. In addition, although defendants did make the improvements "at their own peril" on the basis of a quitclaim deed, plaintiffs permitted defendants to expend considerable sums on improvements before pursuing an action to have those improvements removed. Especially in light of the "antagonizing conduct of Plaintiffs towards Defendants," even if plaintiffs had a right-of-way easement over the Paige Street property, it would have been inequitable to require defendants to remove those improvements at their own expense. See *Youngs*, 317 Mich at 545; *Roy*, 262 Mich at 668-669. At a minimum, the proper equitable remedy would have been to require plaintiffs to compensate defendants for at least some of the cost of the improvements and at least some of the cost of their removal. However, because no right-of-way over the Paige Street property exists, that issue is moot.

The trial court's holding that defendants own fee simple title to the Paige Street property is affirmed. The trial court's holding that plaintiffs enjoy any easement rights over the Paige Street property is reversed. Defendants, being the prevailing parties, may tax costs. MCR 7.219(A).

/s/ Amy Ronayne Krause
/s/ Thomas C. Cameron
/s/ Michelle M. Rick